*C. W. Wright*, Attorney General, for the State.

*Browne & Putnam*, for appellant.

---

## EX PARTE JAMES D. STOUT.

*(Supreme Court of Colorado, April 2, 1881—Application for writ of Habeas Corpus.)*

CONSTITUTIONAL LIMITATION OF LEGISLATIVE POWER—LOCAL LEGISLATION. The act of the general assembly establishing a criminal court for the county of Arapahoe, providing for a judge and regulating the jurisdiction thereof, is a "local or special law" within the meaning of the constitution of the state, (Sec. 25, Art. 5; Sec. 28, Art. 6.) These provisions are both mandatory and prohibitory, and an act of the general assembly, in contravention thereof, is unconstitutional and void.

CRIMINAL COURTS may be *created* by local or special acts; but their organization, jurisdiction and practice must be provided for by general laws, of uniform operation throughout the state.

Sec. 24, Art. 6, of the constitution, authorizes the legislature to create criminal courts from time to time as necessity may require, and to this extent the act in question is constitutional, but no further.

BECK, J. This is a petition for a writ of *habeas corpus* presented by James D. Stout, who states that Charles W. Wright, pretending to act as judge of the criminal court of Arapahoe county, on the 18th day of March, 1881, caused the petitioner to be brought before him and tried before a jury upon an indictment, charging the petitioner with the crime of petit larceny. That the jury returned a verdict of guilty, and that afterwards, on the 26th day of March, said judge sentenced the petitioner, upon said verdict, to thirty days imprisonment in the county jail of Arapahoe county.

The petition charges, among other thing, that the act establishing the criminal court of Arapahoe county, is unconstitutional and void.

The sheriff and jailer of said county return as the cause of imprisonment, that they hold the petitioner in custody under and by virtue of a *mittimus* issued out of and under the seal of the criminal court of Arapahoe county.

The controlling question presented by the petition and return to the writ is, whether the prisoner is in custody by virtue of process from a court legally constituted.

Under the provisions of section 3, of our *habeas corpus* act, (G. L., p. 497,) if it appears on the hearing that the process by virtue of which the prisoner is restrained of his liberty has been issued by a person unauthorized to issue the same; or, if it appears that he is in custody by virtue of process from a court not legally constituted, the prisoner may be discharged.

If the act creating this criminal court, providing for its organization, establishing its jurisdiction and regulating its practice is unconstitutional, the judgment is void, and the prisoner is illegally deprived of his liberty. *Herrick* v. *Smith*, 1 Gray, 49.

Section 24, article 6, of the constitution, which provides for the creation of criminal courts, is as follows: "The general assembly shall have power to create and establish a criminal court in each county having a population exceeding fifteen thousand, which court may have concurrent jurisdiction with the district courts in all criminal cases not capital; the terms of such courts to be as provided by law."

Under this section two separate local or special acts were passed at the recent session of the legislature, one, creating and establishing a criminal court for Arapahoe county, and the other, a similar court for Lake county.

We were called upon recently to consider the constitutionality of that portion of the latter act which provided for the appointment of a judge, and for filling vacancies in said office. But the question of the constitutionality of the act as a whole was not raised and could not be properly considered. The validity of the Arapahoe county act is now challenged on the ground that it violates two sections of the constitution, viz: Section 25 of article 5, and section 28 of article 6. The former provides that "the general assembly shall not pass local or special laws in any of the following enumerated cases; that is to say,    *    *

*    regulating the practice in courts of justice,    *    * *    providing for changes of venue in civil or criminal cases, *   *   *    summoning or impaneling grand or petit juries,   *   *   *    in all other cases where a general law can be made applicable no special law shall be enacted."

The latter section is as follows: "All laws relating to courts shall be general and of uniform operation throughout the state, and the organization, jurisdiction, powers, proceedings and practice of all courts of the same class of grade, so far as regulated by law, and the force and effect of the proceedings, judgments and decrees of such courts severally shall be uniform.

Three principal propositions are relied upon to maintain the validity of the act:

*First*—That the constitutional provision, which authorizes the creation of criminal courts in counties having a population exceeding 15,000, does not contemplate that every county having the requisite population shall have such a court, but that courts of this character may be established from time to time, in the discretion of the general assembly, as necessity or expediency may require.

*Second*—That a general act cannot be made applicable for the purpose.

*Third*—That the question whether a general law can be made applicable is exclusively a question for the legislature, and its discretion concerning the same is not subject to review by the courts.

There is great force in the first proposition, and we are of the opinion that the section of the constitution which provides for the creation of criminal courts is susceptible of the construction stated. It is a well known fact that there is more crime, hence a greater necessity for courts, where large bodies of people are thrown together, as in populous cities, than where the people are distributed over extensive areas of land, as in the agricultural districts, or even in the smaller towns and villages throughout the country.

It is not every county possessing the requisite population which would need a criminal court; perhaps but a small proportion of such counties would either require or desire such a court. In this view of the subject the power of deciding when such necessity exists may perhaps be properly left to legislative discretion. It is certainly true that a general law creating and establishing criminal courts in all counties possessing the requisite population, would in many instances prove not only unnecessary, but burdensome to the people as well.

But it does not follow that if the legislative assembly be invested with power to create criminal courts by local or special acts from time to time, as occasion may require, that it may also by the same, or acts of like character, determine the manner of organization, the extent of jurisdiction, or prescribe the practice of such courts.

This brings us to the consideration of the second and third propositions above stated, which may be considered together, viz: Whether a general law can be made applicable for the purposes indicated, and whether the decision of this question rests in legislative discretion.

Section 28 of article 6, expressly requires the enactment of a general law which shall have a uniform operation throughout the state for the above mentioned purposes. The case is enumerated in the constitution, and its provisions are both mandatory and prohibitory. The two sections of the constitution bearing upon the point summarily dispose of the point made in respect to legislative discretion by the positive requirements that only a general law shall be effectual for such purposes.

No discretion is invested in the legislature concerning the character of the law by which the organization, jurisdiction, powers, proceedings and practice of these courts shall be pre-

scribed and regulated. The direction is peremptory that it shall be a general law of uniform operation throughout the state.

Being an enumerated case, in the fundamental law, the authorities cited by counsel in respect to legislative discretion under different constitutional provisions, cannot control. The law under which the criminal court of Arapahoe county was organized, and from which the power and practice claimed for it are derived, is clearly a "special or local" act, as those terms are employed in the constitution. The form and scope of the entire act is confined to a single county and to a single court. It is not general in any sense of the term, and it is not susceptible of a construction which would give it a uniform operation.

All clauses and sections of the constitution relating to courts admit of a construction permitting criminal courts to be created from time to time, as necessity may require, but they are incapable of a construction which would authorize the legislative assembly to provide for their organization, and to prescribe their jurisdiction and practice by special or local laws.

It is well known that the inhibitions relating to courts in the constitution were designed by the framers of that instrument to cure evils then existing in the jurisdiction and practice of the territorial courts, and to prevent a recurrence of such evils under the state government. The effect of these constitutional provisions was to blot out of existence the numerous special territorial laws relating to courts, and to deprive the state legislature of power to re-enact the same or pass similar laws.

It is a historical fact that, prior to the adoption of the constitution, the jurisdiction and practice of courts of the same class were often as diverse as if such courts were located in different states or territories. The Arapahoe county probate court act; the Gilpin county *certiorari* act; the act of 1872 superseding indictments in two counties of the state in cases of misdemeanors and crimes not capital, by requiring informations to be filed in such cases; and local acts defining the jurisdiction and practice of justices of the peace in certain counties, furnish illustrations of the character of the territorial legislation which had prevailed.

It is admitted by counsel that the provisions of our constitution now under consideration were borrowed from the constitution of 1870 of the state of Illinois. A reference to the decisions

of the Supreme Court of that state rendered since the adoption of that instrument shows that the same character of legislation prevailed there as here prior to its adoption, and that the provisions against the passage of special or local acts relating to courts were inserted for the purpose of restoring and securing uniformity in the organization, jurisdiction and practice of courts of the same class or grade. These provisions have been held to be both mandatory and prohibitory in that state. *Phillips* v. *Quick*, 63 Ill., 445; *O'Conner* v. *Leddy*, 64 Ill, 299; *Frantz* v. *Fleitz*, 85 Ill., 362.

The two acts establishing criminal courts, passed by the last legislature, are shown by the journals to have been contemporaneous in their passage through both houses, and in their authentication by the presiding officers thereof, and, since neither act received the executive approval during the session, it cannot be held that either constitutes a standard to which the other and subsequent acts must be held to conform, even if the local character of the same be left out of question.

There is, indeed, great similarity, in many respects, in these acts, but similarity does not satisfy the requirements of the constitution. Only a general law will do this, under which all courts of this class, which may be created, can be organized, and which shall define their powers and establish their practice. In no other manner can uniformity be secured. For example: There is a similarity between the two acts in respect to the appointment of judges. Under the Lake county act, a judge was appointed by the governor, and another judge by the county commissioners. A constitutional provision required us to sustain the appointment of the county commissioners. The legality of the governor's appointment is again challenged in the present case, and, were it necessary to consider and decide the point, we should probably be able to sustain the appointment in this instance. And when it is considered that one act contains twenty-four sections, the other but seventeen, and that the phraseology and arrangement of the subject matter of the two acts are essentially different, the want of uniformity becomes apparent.

The act under consideration is clearly a special or local act, applicable to the criminal court of Arapahoe county only, and wholly independent of the Lake county act in every respect.

The conclusion is therefore inevitable, that the plain and unambiguous requirements of the constitution, that all laws relating to courts shall be general and of uniform operation throughout the state, and that the organization, jurisdiction, powers, proceedings and practice of all courts of the same class or grade, so far as regulated by law, shall be uniform, have been wholly disregarded in the passage of this law. It is equally clear that the other constitutional provision has been violated which prohibits the enactment of local or special laws regulating the practice in courts of justice, and in all other cases where a general law can be made applicable.

The act is constitutional, in so far as it creates a criminal court for Arapahoe county, but no further.

We are not insensible of the fact that, in deciding an act passed by a co-ordinate branch of the state government to be null and void, we assume a weighty responsibility, and perform a very delicate duty. But the constitution is the paramount law, and its supremacy must be asserted whenever a legislative enactment comes clearly in conflict with it. Cooley's Const. Lim., pp. 159, 160.

It does not appear, from the submission in the present case, whether the indictment was found in the criminal court or in the district court. It does appear, however, that, on the 26th day of March last, the prisoner was sentenced to thirty days' imprisonment in the county jail of Arapahoe county; consequently that, at the present date, he has served twenty-seven days of the term allotted to him. In consideration of these circumstances, we deem it unnecessary, in the present instance, to require the production of testimony as to the existence of legal cause for the commitment of the prisoner, with a view of admitting him to bail to answer an indictment of the district court, as it would otherwise become our duty to do under the provisions of the *habeas corpus* act, but will direct that the prisoner be discharged.

*Brazee & Shaforth*, attorneys for petitioner.
*I. E. Barnum, contra.*