## EX PARTE WHITE.

*(Supreme Court of Colorado, May, 1881—Application for writ af Habeas Corpus.)*

CRIMINAL COURTS. All laws regulating the proceedings, practice and jurisdiction of, must be general; and the provisions regulating these matters, as regards the criminal court of Lake county, being "local," the act is, in so far, unconstitutional. (*Ex parté* Stout, Colo. Law Reporter May, 1881.)

PER CURIAM. In the case of *State* v. *Rucker*, decided at the present term, the constitutionality of the Lake county criminal court act was called in question, (1) in so far as it made the office of criminal judge appointive, and (2) in so far as it vested in the governor the power to fill vacancies therein. In all other respects its constitutionality was conceded, and in no other respect was or could its constitutionality be properly considered by the court.

The act is now challenged as unconstitutional on other grounds, to wit: As violating section 25 of article V, and section 28 of article VI, of the constitution.

The former provides that "the general assembly shall not pass local or special laws in any of the following enumerated cases; that is to say, *   *   *   regulating the practice in courts of justice, *   *   *   *   providing for changes in venue in civil or criminal cases, *   *   *   *   summoning or impaneling grand or petit juries, *   *   * in all other cases where a general law can be made applicable no special law shall be enacted."

The latter section is as follows: "All laws relating to courts shall be general, and of uniform operation throughout the state, and the organization, jurisdiction, powers, proceedings and practice of all courts of the same class or grade, so far as regulated by law, and the force and effect of the proceedings, judgments and decrees of such courts severally shall be uniform."

By this it will be seen that the same questions are presented that were presented in the late case of *ex parte* Stout, decided at the present term, in which the constitutionality of the Arapahoe county criminal court act was considered. The decision in that case must control the decision in this.

In that case Mr. Justice Beck says:

"But it does not follow that if the legislative assembly be invested with the power to create criminal courts by local or special acts from time to time, as occasion may require, that it may also by the same, or acts of like character, determine the manner of organization, the extent of jurisdiction, or prescribe the practice of such courts. *   *   *

*   *   * No discretion is invested in the legislature concerning the character of the law by which the organization, jurisdiction, powers, proceedings and practice of these courts shall be prescribed and regulated. The constitutional direction is peremptory that it shall be a general law of uniform operation throughout the state. *   *   * All clauses and sections of the constitution relating to courts admit of a construction permitting criminal courts to be created from time to time, as necessity may require, but they are incapable of a construction which would authorize the legislative assembly to provide for their organization, and to prescribe their jurisdiction and

practice by special or local laws.   *   *   *   The two acts establishing criminal courts, passed by the last legislature, are shown by the journals to have been contemporaneous in their passage through both houses, and in their authentication by the presiding officers thereof, and, since neither act received the executive approval during the session, it cannot be held that either constitutes a standard to which the other and subsequent acts must be held to conform, even if the local character of the same be left out of question.

"There is, indeed, great similarity, in many respects, in these acts, but similarity does not satisfy the requirements of the constitution. Only a general law will do this, under which all courts of this class which may be created can be organized, and which shall define their powers and establish their practice. In no other manner can uniformity be secured.   *   *   *

"When it is considered that one act contains twenty-four sections, the other but seventeen, and that the phraseology and arrangement of the subject matter of the two acts are essentially different, the want of uniformity becomes apparent.

"The act under consideration is clearly a special or local act, applicable to the criminal court of Arapahoe county only, and wholly independent of the Lake county act in every respect. The conclusion is therefore inevitable that the plain and unambiguous requirements of the constitution, that all laws relating to courts shall be general and of uniform operation throughout the state, and that the organization, jurisdiction, power, proceedings and practice of all courts of the same class or grade, so far as regulated by law, shall be uniform, have been wholly disregarded in the passage of this law. It is equally clear that the other constitutional provision has been violated which prohibits the enactment of local or special laws regulating the practice in courts of justice, and in all other cases where a general law could be made applicable.

"The act is constitutional in so far as it creates a criminal court for Arapahoe county, but no further."

For the same reasons we must say that the act in question is constitutional in so far as it creates a criminal court for the county of Lake, but no further.

It is hypothetical to say that the term court in this connection implies a judge. Ordinarily, in legal phrase, it does, but when

the legislature establishes a court it must go further and provide for the appointment or election of the judge thereof. Without such a provision the act would be inoperative.

Our view, as expressed in *ex parte* Stout, was, that in this respect, as well as others, the laws governing the criminal courts of the state should be uniform; that judges of these courts should be elected or appointed, and vacancies filled by a uniform system. That the two acts in question were not uniform in this respect, was pointed out in the opinion.

Justice Beck says:

"Under the Lake county act, a judge was appointed by the governor, and another judge by the county commissioners. A constitutional provision required us to sustain the appointment of the county commissioners. The legality of the governor's appointment is again challenged in the present case, and, were it necessary to consider and decide the point," (having reference only to the constitutional provision considered in the Rucker case), "we should probably be able to sustain the appointment of the governor in this instance."

This difference of result is owing to a difference in the language of the two acts, and illustrates their want of uniformity in the mode of appointing the judges.

This difference of language characterizes every section of the two acts, and would inevitably lead, in their practical enforcement, to the most diverse results, where results should be the same.

The constitutional provision requiring that "all laws relating to courts shall be of general and uniform operation" is of the first importance; and while we are fully sensible of the temporary hardship which its enforcement in these two cases entails, we feel certain that it is insignificant in comparison with the confusion, conflict and uncertainty which the two acts, if sustained, would inaugurate.

The prayer of the petitioner must be granted.

*G. G. White*, attorney for petitioner.
*C. S. Thomas* and *H. B. Johnson*, *per contra.*