## CARPENTER v. THE PEOPLE EX REL. TILFORD.

1. It is a question for the legislature to determine whether a special city charter can be amended by a general law, and if a general law cannot for any reason be made applicable, then a special law is authorized by the constitution.

2. It is not to be presumed that the legislature would act in bad faith, or without due investigation and the exercise of sound judgment, in the passage of special acts; yet in the event of such wrongful action clearly appearing it would become the duty of the courts to interfere. Every question of doubt would, however, be resolved in favor of the validity of the act challenged.

3. Sections 13 and 14 of article XIV of the constitution do not prohibit the passage of a special act to amend a city charter granted by a local act passed prior to the adoption of the constitution, when such city has not elected to become subject to, and to be governed by, the general law relating to corporations.

4. The subject-matter of article XV of the constitution relates to private corporations. The reference to municipal and the other corporations named in section 2 of the article was for the purpose of excepting them from the operation of the provision respecting special legislation.

5. The charter of a corporation is its constitution, and gives the corporation all the powers it possesses; and in this case *held*, that upon the taking effect of the amended charter of the city of Denver

(act of 1883), all prior legislation and all ordinances inconsistent with its provisions and not embraced within the scope of the saving clause were repealed.

6. The provision of the first clause of section 8, article V, of the constitution only prohibits a senator from being appointed to a civil office, not his election thereto.

*Appeal from District Court of Chaffee County.*

THE case is stated in the opinion.

Mr. GEORGE H. GRAY and Mr. M. B. CARPENTER, for appellant.

Mr. R. H. GILMORE, for appellee.

BECK, C. J.  The legislature, by a special act, approved February 13, 1883, and which went into effect on that day, entitled "An act to reduce the law incorporating the city of Denver and the several acts amendatory thereof into one act, and to revise and amend the same," among other things created the office of city attorney, and provided that an election should be held in each ward of the city on the first Tuesday of April, 1883, for the election of a mayor, treasurer, auditor, city attorney and other city officers.

The act further provided that the officers to be elected should hold their respective offices for two years, and until their successors should be elected and qualified; and that every two years thereafter an election should be held for the election of certain officers named, including city attorney.  It also specified that the officers to be elected should qualify before entering upon the duties of their respective offices, and provided, if any officer should fail to qualify within twenty days of his election, the office to which he was elected should be deemed vacant.

An election was held at the time designated, and the relator, Tilford, was elected to the office of city attorney. He qualified in the manner and within the time prescribed, and then made demand upon the respondent,

Carpenter, who was in possession and exercising the duties of said office, for possession thereof. This demand was refused, the respondent claiming to hold said office by virtue of an election by the city council of said city, held on the 1st day of March, 1883, and claiming that he was entitled to hold said office for and until the 16th day of November then next ensuing, by virtue of the provisions of a city ordinance adopted on the 5th day of April of said year.

Respondent also denied the validity of the law under which the relator claims title to said office on the ground that it is a local or special law, and for that reason void under the provisions of the state constitution. In the case of *Brown v. The City of Denver*, 7 Colo. 305, we held, as against a similar constitutional objection, that the special act entitled "An act to reduce the law incorporating the city of Denver and the several acts amendatory thereof into one act, and to revise and amend the same," approved April 6, 1877, was constitutional.

The constitutional question now presented is substantially the same, and involves a construction of the same constitutional provisions, although arising under a legislative act of a later date.

The provisions of the constitution bearing upon this question are as follows: Sec. 25, art. V. "The general assembly shall not pass local or special laws in any of the following enumerated cases, that is to say:" [Then follows a long list of cases, none of them relating to the granting or amending of city charters, after which the section concludes thus:] "granting to any corporation, association or individual the right to lay down railroad tracks, granting to any corporation, association or individual any special or exclusive privileges, immunity or franchise whatever. In all other cases where a general law can be made applicable, no special law shall be enacted."

Sec. 13, art. XIV. "The general assembly shall pro-

vide by general laws for the organization and classification of cities and towns. The number of such classes shall not exceed four, and the powers of each class shall be defined by general laws, so that all municipal corporations of the same class shall possess the same powers and be subject to the same restrictions."

Sec. 14, art. XIV. "The general assembly shall also make provision by general law whereby any city, town or village, incorporated by any special or local law, may elect to become subject to and be governed by the general law relating to said corporation."

Sec. 2, art. XV. "No charter of incorporation shall be granted, extended, changed or amended by special law, except for such municipal, charitable, educational, penal or reformatory corporations as are or may be under the control of the state; but the general assembly shall provide by general laws for the organization of corporations hereafter to be created."

Our conclusion in the former case is expressed in the following language: "Whether a special city charter can be amended by a general law, applicable to the whole state, so as to meet the necessities of a particular case, may be a close question, or such amendment may, perhaps, be impossible. Certainly, the first body to pass upon that question is the legislature. If a general law could not, for any reason, be made applicable to the case, then a special law is authorized by the constitution itself, and, with the authorities cited, we are disposed to hold that the decision of the question is for the legislature, and not for the courts."

The provisions of the Missouri constitution of 1865, section 27, article IV, are very similar to our section 25, article V. It enumerates a long list of cases concerning which the legislature is prohibited from passing special laws, and concludes thus:

"The general assembly shall pass no special law for any case for which provision can be made by a general

law; but shall pass general laws providing, so far as it may deem necessary, for the cases enumerated in this section, and for all other cases where a general law can be made applicable."

Under this section the courts of that state have held that as to legislation not falling within the prohibited acts, it is the duty of the legislature to decide whether a general law can be made applicable or not; that the constitutional rule is laid down as a guide for the law-making power, and it is to judge of the necessity of each case as it arises. *State ex rel. v. County Court*, 50 Mo. 317; *State ex rel. v. County Court*, 51 Mo. 82; *Hall v. Bray*, id. 288.

The constitution of the state of Kansas, sec. 17, art. II, contains the following provisions: "All laws of a general nature shall have a uniform operation throughout the state; and in all cases where a general law can be made applicable, no special law shall be enacted." This section was construed by the supreme court of Kansas, in *State ex rel. Johnson v. Hitchcock*, 1 Kan. 178, to leave a discretion to the legislature, and to impose upon that body the responsibility of determining whether or not, in a given case, the purpose designed could be expediently accomplished by a general law.

This decision was affirmed in *Beach v. Leheay*, 11 Kan. 23; and in *Francis v. A. T. & S. F. R. R. Co.* 19 Kan. 303.

Under another provision of the Kansas constitution, however, the case now before us would be a prohibited case in that state, section 1, article XII, providing that "the legislature shall pass no special act conferring corporate powers."

The constitution of Indiana, by section 22 of article IV, prohibits the legislature from passing local or special laws in a long list of enumerated cases.

Section 23 of the same article provides as follows: "In all the enumerated cases in the preceding section, and in all other cases where a general law can be made

applicable, all laws shall be general and of uniform operation throughout the state."

The effect of these provisions was considered by the supreme court of Indiana, in *Thomas v. The Board of Commissioners*, 5 Ind. 4, wherein it was held to be a judicial question whether a general law could be made applicable. The reasoning in favor of this construction was, that if the courts could not review the judgment of the legislature upon this question, the twenty-third section would have no validity; that it would impose no restriction nor confer any power upon that body which it would not possess in the absence of such a provision.

This decision was overruled in *Gentile v. State*, 29 Ind. 409, wherein it is said: "The reasoning upon which it is based is regarded as unsound, and does not, therefore, support the conclusion reached." The court further say substantially, that the object of the twenty-third section was not to confer any power on the legislature, but was intended as a restriction, binding upon the conscience of each member, under his official oath, which it is not to be presumed he would wilfully disregard in the enactment of laws. That the question whether a general law can be made applicable is peculiarly addressed to the legislative judgment, and when that body decides that it cannot, the reasons, although satisfactory to it, may not appear on the face of the law, and may not suggest themselves to the mind of a court, and thus the legislature and courts would be liable to be brought into frequent conflict to no beneficial purpose if it were held to be a judicial question.

The same rule has been repeatedly announced in that state. See *State ex rel. Pitman v. Tucker*, 46 Ind. 358.

The following cases are cited as laying down a contrary doctrine: *Thomas v. Board of Commissioners*, 5 Ind. 4. This case was subsequently overruled, as above noted, by *Gentile v. State*, 29 Ind. 409, the reasoning therein being declared unsound.

The decisions in the following cases, *Atchison v. Barlow*, 4 Kan. 144; *Clegg v. Richardson County*, 8 Neb. 178, and *State v. Cincinnati*, 23 Ohio St. 445, were all based on prohibitory clauses existing in the constitutions of the several states mentioned, providing that *the legislature should pass no special act conferring corporate powers*. These cases may, therefore, be classed with *Ex parte Stout*, 5 Colo. 509, also cited, all of which held that special laws in cases clearly prohibited by the constitution are void.

The following New Jersey cases are cited: *Van Riper v. Parsons*, 40 N. J. L. 1; *Brigham v. Camden*, id. 156; *Sutterly v. Camden*, id. 550. The substance of these cases, so far as they relate to the subject under consideration, is, that the amending of city charters by special laws is in violation of the following constitutional provision of the state:

"The legislature shall not pass private, local or special laws in any of the following enumerated cases, that is to say: * * * regulating the internal affairs of towns and counties; * * * the legislature shall pass no special act conferring corporate powers, but they shall pass general laws under which corporations may be organized, and corporate powers of every nature obtained, subject, nevertheless, to repeal or alteration at the will of the legislature."

From this review, it will be observed that where conclusions were reached in the cases cited, which are in conflict with that announced in *Brown v. The City of Denver*, upon this question, they were based on constitutional provisions different from the provisions of section 25 of article V of our constitution.

After a careful re-examination of all the authorities found which bear upon the subject, and upon reason and principle, we think the better view is that whether a general law can be made applicable, or whether a special law is authorized for a purpose not falling within the

enumeration of prohibited cases, is peculiarly a legislative question. It is certainly more a question of fact than a question of law. The constitutional restriction imposes upon the legislature the duty of looking into the facts of every case for which a special act is proposed; and it is only when the legislative mind becomes convinced, from a due investigation, and mature consideration of the facts and circumstances pertaining thereto, that a necessity exists for a special law, that such a law is authorized.

The same presumption obtains, that the members of the general assembly will exercise an honest and conscientious judgment in such cases, as prevails concerning the judgments of courts. Consequently it is to be presumed, upon the passage of a special statute, that in the judgment of the law-makers, after full and fair investigation, a general law would not effect the purposes designed to be accomplished.

In addition to the authorities cited in support of the decision on this point, it is likewise sustained by 1 Dil. Mun. Corp. sec. 48, wherein the learned author says: "Under a constitution which provides that, 'in all cases when a general law can be made applicable, no special law shall be enacted,' the better view, and the one supported by the decided weight of authority, is, that it is for the legislature to determine whether its purpose can or cannot be expediently effected by a general law."

We are not, however, to be understood as holding that the courts are wholly without jurisdiction as to this question. While it is not to be presumed that a co-ordinate branch of the state government, invested with the duties and powers indicated, and acting under oaths binding upon the consciences of its members, would act in bad faith, or without due investigation and deliberation, and in the exercise of sound judgment, in the passage of special acts, yet in the event of such wrongful action clearly appearing, it would become the duty of the courts to in-

terfere. Every question of doubt, in such event, would be properly resolved in favor of the validity of the act challenged, and due weight would be accorded to the consideration that the legislative judgment was required to be exercised in the case by the very restriction imposed by the constitution.

Another objection arising under the same section of the constitution is, that the special law in question violates the provision which prohibits the legislature from "granting to any corporation, association or individual any special or exclusive privilege, immunity or franchise whatever." It is sufficient to say that if any such privilege, immunity or franchise is granted by the amendment of the city charter, it does not pertain to the office of city attorney. The entire act, therefore, would not fail, even if some portion of it should prove to be unconstitutional.

In respect to sections 13 and 14 of article XIV, *supra*, they do not prohibit the passing of a special act to amend a city charter, granted by a local act passed prior to the adoption of the constitution, where such city has not elected to become subject to, and to be governed by, the general law relating to corporations.

Much learning and ingenuity was displayed by Mr. Gray, of counsel for respondent, in the construction of section 2, article XV, *supra*. He finds it necessary, in order to harmonize this section with his view of the preceding sections mentioned, as we understand him, to insist upon the following novel propositions. First. That the term "*municipal corporations*," as employed in this section, does not mean municipal corporations proper, as cities, and incorporated towns, but means "*quasi municipal corporations.*" Second. That the words "*under the control of the state*," do not mean under its *legislative control*, but under the *executive* or *ministerial* control of the state.

The justification offered for this interpretation is, that

the use of the word "such," in the phrase "for such municipal, charitable, educational, penal or other reformatory corporations as are or may be under the control of the state," renders it necessary in order to give effect to every word in the section; the employment of this word implies that all municipal corporations are not under control of the state; also that this construction harmonizes the section with all other constitutional provisions on the subject of special legislation.

The phraseology of the section may be faulty, but the natural import of the language used, taken in connection with the subject-matter of article XV, in which it appears, to our minds renders the meaning plain and consistent.   Nearly, if not all, the affirmative provisions of this article relate to private corporations.   The purposes of this section were to prohibit the legislature from granting or amending charters for *such* corporations by special acts; and to require the passage of general laws for the organization of corporations thereafter to be created.

A fundamental rule in the construction of a written constitution is, that the first resort in all cases, to ascertain the thought expressed, is the natural signification of the words employed in the order of grammatical arrangement which the framers of the instrument have placed them.   Cooley, Const. Lim. 70.

There is a broad distinction between the legal signification of the term *municipal corporation,* employed in section 2, and the term "*quasi municipal corporation,*" which we are asked to substitute.   A municipal corporation, such as a city or incorporated town, is created by the consent of the people composing it, for their advantage and convenience, and is invested with the power of local self-government.   *Quasi* corporations, on the other hand, rank low down in the scale of corporate existence, are endowed with but few corporate functions, and are

merely auxiliaries of the state.  1 Dil. Mun. Corp. secs. 23, 25, 183.

The corporations enumerated in section 2 include both classes, according to the primary import and natural signification of the words employed.  If, however, we substitute the words *"quasi municipal corporations"* for the words *"municipal corporations,"* we exclude from the section a whole class of corporations specifically named therein.   There is no necessity whatever for such a construction.   Both classes are *"under the control of the state"*— that is, under its legislative control, which is a broader and more natural signification of the words employed than *ministerial* control.   The former is applicable to all the classes named in the section, while the latter is not, it being conceded that municipal corporations proper are not under the ministerial control of the state.

It may be said that private corporations are also under the control of the state, but this is true in a limited sense, and only to the extent of the reservations in their charters, or in the organic law, so far as fundamental changes in such charters are concerned.

In respect to the employment of the word *such* in said section, there is evidently a misapplication of the word. The forced construction contended for, however, does not cure this, since there would still remain the incongruous expression "for such  *  *  * penal or reformatory corporations as are or may be under the control of the state."   The same implication said to arise in respect to municipal corporations proper may quite as consistently be said to arise as to *penal* corporations, if the construction contended for be adopted, to wit: That all penal corporations are not under the ministerial control of the state— a proposition which is no more admissible than that all such corporations are not under its legislative control.

The presumption obtains that the language employed

in this section was designed to be taken in its ordinary acceptation, and to our minds the arguments of counsel fail to demonstrate that this presumption does not hold good. As before stated, the subject-matter of the entire article XV relates to private corporations. The reference to municipal and the other corporations named in section 2 was for the purpose of *excepting* them from the operation of the provision concerning special legislation.

In so far as the questions presented by this record are concerned, the validity of the amended charter must be sustained.

In respect to the rulings of the court upon the trial below, we are of opinion that the facts alleged and admitted in the pleadings, together with the proofs introduced in evidence on the part of the relator, made out a *prima facie* case in his favor.

All proofs offered by the respondent were rejected as incompetent and immaterial, and the jury was directed to return a verdict for the relator. The correctness of these rulings is questioned.

Unless the rejected proofs tended to show a right in the respondent to continue to hold and exercise the duties of the office of city attorney after the election and qualification of Mr. Tilford, no error was committed in their rejection.

The proofs offered were:

*First.* The proceedings of the city council, had on the 16th of November, 1882, showing the election by said council of James A. Dawson as city attorney for the ensuing year.

*Second.* The proceedings of said council, on March 1, 1883, showing the resignation of said Dawson and the election by said council of the respondent to fill the unexpired term.

*Third.* A certified copy of the ordinance of April 5, 1883, which provided, among other things, that all city

officers elected in April, 1883, except the mayor, the aldermen, and the city auditor, should enter upon the duties of their respective offices at the expiration of the full terms of those officers whose offices they were elected to fill, and not before.

So far as the council proceedings offered are concerned, they are of no force, as against the positive provisions of the legislative act of February 13, and the election held thereunder.

The charter of a corporation is its constitution, and gives it all the powers it possesses. Upon the taking effect of the amended charter, all prior legislation and all ordinances inconsistent with its provisions and not embraced within the scope of the saving clause were repealed.

Whether or not the council could legally elect Mr. Carpenter, in March, 1883, to the office of city attorney, the new charter then being in force, which provides that the mayor may fill vacancies which may occur in any elective office, until the same may be filled by election, it is very certain that that body possessed no power to authorize him to hold said office against one duly elected and qualified under the new charter.

The ordinance of April 5, passed two days after the election under the charter, assumed to abridge the terms of the city attorney and certain other officers who had just been elected, by providing virtually that those holding the offices under former elections should remain in office until the expiration of the full term for which they had been elected. This is in direct conflict with the provisions of the charter. It specifies the extent of the terms of the various officers to be elected, when the officers elected shall assume their duties, and when their terms of office shall terminate. Upon qualifying within twenty days of his election, the relator became entitled to the office of city attorney for two years, to end two years thereafter upon the election and qualification of his

successor.  This term could not be abridged by action of
the city council, either by ordinance or otherwise.

The only other question raised, which we deem it neces-
sary to refer to, is the eligibility of the relator to the of-
fice of city attorney, he being at the time of his election
thereto a state senator.

The constitutional provision relied upon as showing
that he was not eligible is the first clause of section 8,
article V:  " No senator or representative shall, during the
time for which he shall have been elected, be appointed
to any civil office under this state."

It was held in *Britton v. Steber et al.* 62 Mo. 370, that
the mayor of the city of St. Louis was not an officer
*under the state*, within the meaning of section 15, article
IV, of the constitution of Missouri, which provides that:
" No senator or representative shall, during the term for
which he shall have been elected, be appointed to any
civil office under this state," etc.

We are cited to two other cases, which are to the same
effect, upon constitutional provisions similar to our own,
viz.: *People v. Provines*, 34 Cal. 520, and *Santo v. The
State*, 2 Iowa, 165 and 220.  These authorities are in
point, and we have no reason to doubt their soundness.

We prefer, however, to rest the decision of the point
upon the plain words of the constitution.  It only pro-
hibits a senator from being *appointed* to a civil office, not
his *election* thereto.

A careful examination of all the various provisions of
the constitution pertaining to offices of various kinds and
grades convinces us that the framers of that instrument
did not employ the words *elect* and *appoint* as synony-
mous, but with due regard to the primary and proper
significance of both words.  Any one who will take the
time to make a careful examination of the constitution
will appreciate the force of this proposition by observing
the accuracy of selection displayed in their use.

The relator not having been *appointed* to the office of

city attorney, it is not important whether it be held to be *a civil office* under the state or not.

We are of opinion that the judgment of the district court should be affirmed, and it is so ordered.

*Affirmed.*