ROGERS v. THE PEOPLE.

1. The original charter and various amended charters of Denver, where not referring to expressly enumerated constitutional inhibitions, are not obnoxious to the constitutional provision dealing with local or special legislation.
2. It was competent for the legislature to confer upon the city authorities exclusive control over the subject of prohibiting and suppressing bawdy-houses, and such exclusive control having been given, a party cannot be indicted and tried under the general law of the state, such power having been accepted by the enactment of an ordinance covering the offense.
3. The repeal or suspension of the general law thus effected within the city producing, as it does, a disturbance in the territorial jurisdiction of the criminal courts, is not obnoxious to the constitutional provision relating to the uniformity of jurisdiction, etc., of courts of the same class or grade.

*Error to Criminal Court of Arapahoe County.*

Messrs. ROGERS and McCORD, for plaintiff in error.

THEO. H. THOMAS, Attorney-General, for the People.

HELM, J. The principal question presented in this case may be briefly stated as follows: Does the statute of 1885, which confers upon the city council of Denver power, by ordinance, "exclusively to prohibit and suppress * * * dance-houses, bawdy-houses, disorderly houses, houses of ill fame or assignation, or any place for the practice of lewdness or fornication within said city," have the effect of suspending, within the corporate limits of the city, the operation, *pro tanto*, of section 839 of the General Statutes, which reads: "If any person shall be guilty of open lewdness, or other notorious acts of public indecency, tending to debauch the public morals, or shall keep open any tippling or gaming house on the Sabbath day or night, or shall maintain or keep a lewd house or place for the practice of fornication, or shall keep a common, ill-governed, and disorderly house, to the encouragement of idleness, gaming, drinking, forni-

cation, or other misbehavior, every such person shall, on conviction, be fined not exceeding $100, or imprisonment in the county jail not exceeding six months?"

This general provision was adopted upwards of twenty years ago, and has never been repealed. The special act above mentioned is the later of the two. Therefore, if both are valid, and if both cannot be given full force and effect, the former must give way to the extent of the conflict existing between them.

The original charter and various amended charters enacted for the government of the city of Denver, in so far as they do not refer to matters within the expressly enumerated constitutional inhibitions, are not obnoxious to objection under section 25, article 5, of the constitution, which treats of local or special legislation. And, in general, a legislative amendment of the charter will not be reviewed by this court for the purpose of determining whether, under the concluding sentence of this constitutional provision, the changes incorporated could be made by general law. *Brown v. City of Denver*, 7 Colo. 305; *Carpenter v. People*, 8 Colo. 116; *Darrow v. People*, 8 Colo. 426.

The use by the general assembly of the word "exclusively," in conferring power to prohibit and suppress bawdy-houses, indicates a design to place that matter entirely under the control of the city council. A provision relating to the prohibition and suppression of bawdy-houses has existed in the charter since 1874, but until the last session of the legislature the authority thus vested in the council was not exclusive. This fact demonstrates that the word "exclusively" could hardly have found its way into the enactment through inadvertence or mistake. The intention of the legislature in the premises is too plain to admit of serious doubt.

The pleadings show that the city council accepted and duly exercised the authority conferred; that an ordinance was passed in strict conformity with the statute in

question, and fully covering the subject. Under the circumstances, unless the general assembly was powerless to delegate such exclusive control, or unless the legislative action be in conflict with some constitutional provision other than the one above mentioned, it follows that all prosecutions for committing the forbidden act within the limits of Denver must take place under the city ordinance.

Can the general assembly confer upon the council exclusive legislative control over this subject? A house of prostitution is a constant menace to the public peace and good order of the community in which it exists. It is a nuisance, and its keeping a misdemeanor, at common law. Its suppression and punishment are proper subjects of police regulation. In one form or another the authority to prohibit and suppress is very generally given to cities and towns and quite as generally exercised by them. It is true, the general policy of our statutes and of the common law is to wholly inhibit these places, and it is also true that the people of the entire state are, to some extent, interested in the suppression thereof. But, in the *first* place, the statute gives the council no authority to *license* or *regulate* — they can only prohibit and suppress — the evil; and, *secondly*, the existence of such houses within the corporate limits is a matter that peculiarly concerns the citizens of Denver. They, more than the people elsewhere, are brought into contact therewith, and. suffer through the vicious influences emanating therefrom. Moreover, the subject is one with which, from its very nature, the local authorities can more intelligently and effectively deal than can the general assembly. It is a matter fairly pertaining to the province of "local self-government." It was competent for the legislature to give the city council legislative control. Cooley, Const. Lim. 228, and note; also, page 261. And we discover no sufficient reason for holding that this authority shall not be made exclusive and plenary, con-

trolled only by such express constitutional inhibitions or mandates as may be found applicable. *State v. Clarke*, 54 Mo. 17; *State v. De Bar*, 58 Mo. 395; *Davis v. State*, 2 Tex. App. 425; *Berry v. People*, 36 Ill. 425; *State v. Gordon*, 60 Mo. 383; *Hetzer v. People*, 4 Colo. 45; *Huffsmith v. People*, 8 Colo. 175; *Seibold v. People*, 86 Ill. 33, and cases.

In *Berry v. People* and *State v. Gordon*, above cited, the offenses charged were gambling and disturbance of the peace, respectively. In the cases of *Hetzer, Huffsmith*, and *Seibold v. People*, the prosecutions related to tippling-houses or the vending of intoxicating liquors. But, so far as the delegation of exclusive legislative control is concerned, we think these decisions may fairly be cited in support of our conclusion in the case at bar.

It is insisted that the power "to prohibit and suppress" does not include the power to provide for punishment. This proposition is not tenable. The right to pass ordinances usually carries with it "the incidental right to enforce them by reasonable pecuniary penalties." 1 Dill. Mun. Corp. §§ 338, 376, and note 1; Bish. St. Crimes, § 21. Besides, section 18 of the act in question reads as follows: "The city council is hereby authorized to provide for the punishment of all offenses against the ordinances of the city, by imprisonment," etc. Having the authority to pass an ordinance to prohibit and suppress bawdy-houses, and having power "to provide for the punishment of all offenses against the ordinances," it follows that the council is authorized to provide for the punishment of those who violate the ordinance imposing this particular inhibition. The phrase "to provide for the punishment," as used, confers at least concurrent power over the subject of punishment. Such power must, of course, be exercised subject to constitutional requirements in relation to courts, their procedure and practice.

But a further and more embarrassing question is pre-

sented. Section 28, article 6, of the constitution provides as follows: " All laws relating to courts shall be general, and of uniform operation throughout the state; and the organization, jurisdiction, powers, proceedings and practice of all courts of the same class or grade, so far as regulated by law, and the force and effect of the proceedings, judgments and decrees of such courts severally, shall be uniform."

Since the effect of the act now under consideration is to repeal, within the corporate limits of Denver, a part of section 839 of the General Statutes, and since no prosecutions for offenses committed within the city can be maintained under the provision thus repealed, the indirect result is that the territorial jurisdiction of the criminal court of Arapahoe county over certain misdemeanors is correspondingly curtailed; while the power of the criminal courts in Lake and Pueblo counties to entertain prosecutions throughout those counties for such offenses, under the general statute referred to, remains the same as before. Therefore, counsel contend the uniformity of jurisdiction required by the constitution among the criminal courts, which are unquestionably courts of the same class or grade, is by virtue of the Denver statute destroyed.

Section 13, article 14, of the constitution commands the legislature to provide by general law for the organization and classification of cities and towns. It limits the number of such classes to four, and requires that the powers and restrictions of all cities or towns belonging to the same class shall be similar. This provision clearly authorizes the granting of different powers and different restrictions to the different classes of municipal corporations mentioned. And there is clear constitutional authority for bestowing upon one class, within certain limits, exclusive législative control over a given subject pertaining to local self-government, while another class is allowed only concurrent power in connection therewith.

If the existing general act relating to cities and towns placed in the first class all cities having a population of thirty thousand or upwards, and conferred upon them the identical powers specified in the special charter before us, Denver could, at present, be the only city of this class. But, if Denver were re-incorporated under such general law, there would be produced the exact result we are now discussing; that is to say, the *exclusive* power to prohibit and suppress bawdy-houses would be exercised by Denver alone, a part of section 839 of the General Statutes would be suspended within its corporate limits, and the territorial uniformity of jurisdiction of the criminal courts would thus suffer the self-same disturbance of which counsel complain. But if the legislature, in its wisdom, should see fit to repeal section 839, aforesaid, the disturbance would at once cease, and entire territorial uniformity would be restored. A like result would also follow such repeal where, as in the case at bar, the supposed want of uniformity is produced by a *special* act which is otherwise constitutional.

Thus it appears that the view urged upon us in this connection leads inevitably to the following, among other curious conclusions, viz.: That the constitutionality of a statute may, in a given instance, be made to depend, not upon its character or its *status* with reference to the constitution, but upon its relation to some other legislative enactment; and that in such case while each act, standing alone, would be perfectly valid, the co-existence of both renders one of them unconstitutional and void.

In construing constitutional as well as statutory provisions, the cardinal rule is to discover and enforce the intention of those who made them. Hence we are led to inquire, what was the purpose of the framers of the constitution when they inserted section 28 of article 6, and what was the purpose of the people when, in their sovereign capacity, they adopted it? It is a well known fact that under our territorial government, laws providing

for the organization, jurisdiction and procedure of courts of the same grade were often widely different. This diversity was sometimes as great "as if [to use the language of Mr. Justice BECK in *Ex parte Stout*, 5 Colo. 509] such courts were located in different states or territories." It is unnecessary to dwell upon the inconveniences and evils resulting from such a condition of affairs, or to detail the advantages arising from uniformity in these respects throughout the state. The importance and value of such uniformity are obvious to all interested persons, particularly to all members of the bench and bar.

It was doubtless with a view to preventing, under the new government, the existence of such mischievous confusion in this regard that said section 28 was adopted. The attention of the constitutional convention was directed to those laws which had been or would be passed by the legislature on the subject of courts, their jurisdiction and procedure. The members of that body did not contemplate, and were not considering, general legislation with reference wholly to other matters. Their leading design in framing the provision before us evidently was to compel such legislation as would remedy the existing evils in this respect, and to have all laws thereafter adopted in relation to courts general and of uniform operation throughout the state; also to require that statutes providing for the organization and defining the jurisdiction, practice or procedure of courts of the same class or grade, be so drawn as to secure to *such* courts an organization, jurisdiction, practice and procedure in all respects similar. This section was not intended to inhibit the passage of statutes entirely upon other subjects, and sanctioned by other constitutional provisions, which, however, might incidentally and remotely operate to disturb, for the time being, the *territorial* uniformity of jurisdiction possessed by courts of the same class or grade.

We feel compelled to overrule the objection in this behalf urged. In the *first* place, the statute conferring

upon the city council of Denver exclusive authority to prohibit and suppress the evil mentioned, is sanctioned by the ,constitution itself. *Second.* It does not deal, nor was it intended to deal, in any manner with courts or their jurisdiction. It was simply designed to place in the hands of the city council legislative authority to pass an ordinance prohibiting and suppressing the evil, together with the incidental authority to prescribe a penalty for the violation thereof. The power of designating a court in which prosecutions for the offense should take place, or of prescribing the jurisdiction and procedure of such court, is not sought to be given, nor is there any attempt to exercise it. *Third.* As we have already seen, the effect of this statute is simply to suspend, within the corporate limits of Denver, the operation of a part of said section 839, which general law does not refer to courts, or purport to prescribe the jurisdiction or procedure of any class of courts. On the contrary, it was passed solely for the purpose of recognizing as misdemeanors certain acts therein enumerated, and designating the punishment that should be inflicted upon persons found guilty thereof.

To say, under all the circumstances, that there is such a conflict between the statutory provision assailed and section 28, article 6, of the constitution as invalidates the former, would be to adopt a rule of constitutional interpretation of which we find in the books no sufficient recognition. Besides, it would, in our judgment, lead to a vast amount of uncertainty and litigation; for, by thus giving an effect to constitutional provisions not intended by the convention or the people, necessary legislation would be rendered more difficult than it is, and many beneficent statutes would fall. Upon this view we rely with confidence; but, were we to admit that the question is a doubtful one, there would still, under the authorities, be no ground for judicial interference.

We are aware of the principle that in law, as a gen-

eral thing, that which cannot be done directly cannot be done indirectly. But, as we have tried to show, this principle has no real application to the case at bar. Any clear legislative attempt to evade indirectly a constitutional provision would be as promptly held void as a direct assault thereon couched in the most unambiguous terms.

The branch of the discussion relating to the constitutional provision which clothes district courts with "original jurisdiction of all causes, both at law and in equity," will not be considered. The subject is not fairly involved in the case, and our views thereon would be *obiter dicta*.

From the foregoing conclusions it appears that the plea to the indictment was good and that the demurrer thereto should have been overruled. The judgment is accordingly reversed.

*Reversed.*