No. 23537.

C. C. SANDERS *v.* THE DISTRICT COURT IN AND FOR THE COUNTY OF MONTROSE, AND THE HONORABLE GEORGE V. KEMPF, ONE OF THE JUDGES THEREOF.

(444 P.2d 645)

Decided August 19, 1968.     Rehearing denied September 16, 1968.

456

WILLIAM J. KNOUS, for petitioner.

PETRIE, KING, WOODROW & ROUSHAR, for respondents.

*En Banc.*

MR. JUSTICE McWILLIAMS delivered the opinion of the Court.

THIS is an original proceeding wherein one C. C. Sanders, an "associate county judge" in Montrose County, filed a petition in this court seeking the issuance of a rule to show cause. Specifically, Sanders asked that we direct and require the district court in and for the County of Montrose and the Honorable George V. Kempf, one of the judges thereof, to show cause, if such they could, why certain judgments theretofore entered by the respondent judge should not be vacated and set aside. According to Sanders, who will hereinafter be referred to as the petitioner, the judgments here under attack are "void" for the reason that the respondent court is claimed to have "lacked jurisdiction" to enter the same.

We granted petitioner's request and issued a rule to show cause. The respondents have filed their response thereto and the matter now awaits our determination.

A bit of background information is in order. Pursuant to 1965 Perm. Supp., C.R.S. 1963, 37-14-8 and 9(2) the petitioner on January 12, 1965 was appointed by the Board of County Commissioners for Montrose County to the position of associate county judge. Thereafter petitioner served in that particular judicial position until March 8, 1968. It was on this latter date that the respondent judge decreed that the aforementioned statute creating the position of associate county judge in Montrose County was unconstitutional. Whereupon the respondent judge, among other things, then proceeded to

"permanently prohibit" the petitioner from "attempting to exercise such powers" of that office.

Those judgments by the respondent judge which are here under attack were entered by the respondent judge in two actions which had been filed in the respondent court and which were consolidated for purposes of trial. The first of these two actions was entitled *"People ex rel. Bennett v. Sanders."* Bennett was the defendant in a traffic case then pending before the petitioner, and Bennett brought an action in the respondent court to enjoin and prohibit the petitioner from trying his case.

The second action filed in the respondent court was a habeas corpus proceeding entitled *"Reed v. Howlett, sheriff."* Reed had theretofore been convicted by the petitioner of drunk driving and was sentenced to 90 days in the county jail. While serving this sentence, Reed sought his release from jail and accordingly instituted the aforementioned habeas corpus action. Reed claimed that he was entitled to be released from custody on the ground that the proceedings before the petitioner wherein he was given a 90 day jail sentence were allegedly "null and void" because the statute creating the position of associate county judge in Montrose County was unconstitutional.

As indicated above, these two actions were consolidated for trial and culminated in judgments and decrees which specifically prohibited petitioner from proceeding further in the Bennett matter and directed Howlett, the sheriff, to discharge Reed from the county jail. Each judgment then went on to "permanently prohibit" the petitioner from "attempting to exercise such powers" of an associate county judge. Petitioner filed a motion to vacate the judgments thus entered, alleging therein that the respondent court "lacked jurisdiction to entertain either action" and that its judgments were therefore void and to no effect. After the motion to vacate was denied, petitioner instituted the present original proceeding, alleging, among other things, that the "matter

involved herein is of great public importance and not only concerns petitioner and his official acts, but all other associate and assistant county judges in the State of Colorado and their official acts."

■ In his formal written judgments the respondent judge merely held that the statute creating the "Associate County Court in Montrose County was in violation of the Colorado constitution. [T]he court being nonexistent," the respondent judge reasoned that the petitioner was accordingly "without authority to exercise any powers as judge thereof." However, in his informal findings and conclusions, which were apparently orally delivered from the bench at the conclusion of the trial, the respondent judge quite clearly stated that in his view 1965 Perm. Supp., C.R.S. 1963, 37-14-9(2) was unconstitutional solely because it constituted "local and special" legislation of a type expressly forbidden by Article V, § 25 and Article VI, § 19 of the Colorado constitution. We conclude that the respondent judge erred in thus holding the statute to be unconstitutional.

■ At the outset it should be noted that Article VI, § 1 of the Colorado constitution declares that the judicial power of the state shall be vested in certain designated courts and "such other courts or judicial officers with jurisdiction inferior to the supreme court, as the General Assembly may, from time to time establish. . . . ." Hence, the General Assembly is specifically empowered by our constitution to establish "other courts or judicial officers," as long as such other courts or judicial officers are inferior, jurisdictionally speaking, that is, to the supreme court.

■ However, this constitutionally granted power to the General Assembly to thus establish inferior courts and judicial officers is subject to certain limitations which are themselves embedded in the Colorado constitution. In this regard Article VI, § 19 of the Colorado constitution provides as follows: ·
"All laws relating to state courts shall be general and

of uniform operation throughout the state, and except as hereafter in this section specified the *organization, jurisdiction, powers, proceedings,* and *practice* of all *courts* of the same class, and the force and effect of the proceedings, judgments and decrees of such *courts* severally shall be uniform. County courts may be classified or graded as may be provided by law, and the *organization, jurisdiction, powers, proceedings,* and *practice* of *county courts* within the same class or grade, and the force and effect of the proceedings, judgments and decrees of county courts in the same class or grade shall be uniform, provided, however, that the organization and administration of the county court of the city and county of Denver shall be provided in the charter and ordinances of the city and county of Denver." (Emphasis added.)

Also, Article V, § 25 of the Colorado constitution, which is said to have some bearing upon the disposition of this controversy, provides, *inter alia,* as follows:

"The general assembly shall not pass local or special laws in any of the following enumerated cases, that is to say; for .... regulating the practice in courts of justice .... providing for changes of venue in civil or criminal cases .... summoning or impaneling grand or petit juries .... [I]n all other cases where a general law can be made applicable, no special law shall be enacted."

As indicated, the respondent judge held that 1965 Perm. Supp., C.R.S. 1963, 37-14-9(2) ran afoul of the two constitutional provisions set forth immediately above.

Let us now examine the statute which the trial court declared to be in violation of our constitution. Reference should first be made, however, to 1965 Perm. Supp., C.R.S. 1963, 37-14-8(1), which provides as follows:

"In order to provide for the expeditious handling of county court business and for county court sessions in population centers which are not county seats, there may be created in counties designated by law the

*positions* of associate county judge and assistant county judge." (Emphasis added.)

■■■ It should be noted that the foregoing statute does *not* purport to create a new court. Rather, it creates two new judicial positions, namely, that of associate county judge and assistant county judge. 1965 Perm. Supp., C.R.S. 1963, 37-14-8(2), goes on to provide that associate and assistant county judges shall possess the same qualifications as do the county judges of their respective counties and shall be elected at the same time and in the same manner as are county judges of their respective counties. 1965 Perm. Supp., C.R.S. 1963, 37-14-8(4) provides that associate and assistant county judges "shall have all the jurisdiction and power of a county judge, and their orders and judgments shall be those of the county court."

■■■ As we understand this statute, then, the "jurisdiction and power" of an associate or an assistant county judge is co-equal with that of a full-fledged county judge. The only difference between an associate or assistant county judge and a county judge relates to the emoluments which go with the respective judicial offices. 1965 Perm. Supp., C.R.S. 1963, 37-14-8(5) provides that an associate county judge shall receive one-half of the salary of the county judge and that an assistant county judge shall receive one-fourth of the salary of the county judge. This being the case, it seems obvious, though the statute is silent on the matter, that the General Assembly must have intended that an associate county judge would perform, volume-wise at least, about one-half the amount of work customarily performed by the county judge and the assistant county judge about one-fourth. In other words, associate and assistant county judges are "part time" — not "full time" — county judges, even though under the statute they have "all of the jurisdiction and power of a county judge."

1965 Perm. Supp., C.R.S. 1963, 37-14-9(2), which is

the particular statute declared unconstitutional by the respondent judge, then provides for an associate county judge in Montrose county, with the additional requirement that he maintain his residence in a designated geographical area. It was apparently the thinking of the respondent judge that inasmuch as the aforementioned section 2 of the statute in so many words created the position of associate county judge *only in Montrose County*, it thereby became special or local legislation.

In concluding that 1965 Perm. Supp., C.R.S. 1963, 37-14-9(2) conflicts with Article V, § 25 and Article VI, § 19 of the Colorado constitution the trial court placed reliance on *Ex parte Stout*, 5 Colo. 509, and *Ex parte White*, 5 Colo. 521. In our view those cases do not support the conclusion that the statute here under consideration is unconstitutional and on the contrary tend to support a finding of constitutionality.

At the time of the events which gave rise to *Ex parte Stout* and *Ex parte White*, the Colorado constitution empowered the General Assembly to create a criminal court in any county having a population exceeding fifteen thousand. Accordingly, the General Assembly, by separately enacted bills, created such a criminal court for Arapahoe and Lake counties. This legislation was attacked on the ground that because criminal courts were established *only* in Arapahoe and Lake counties, and not in all counties having a population exceeding fifteen thousand, it constituted special and local legislation of a type prohibited by our constitution. This particular argument was rejected by us and we held in those cases that it was constitutionally permissible to establish criminal courts in only Arapahoe and Lake counties by local or special acts.

It is true that in those two cases this court held that the statutes there under consideration were unconstitutional, but the basis for our holding was that though the General Assembly could by "local or special acts" create criminal courts for only Arapahoe and Lake

counties, the "organization, jurisdiction and practice" of such courts could not be provided for by local or special legislation, but only by general laws, of uniform operation throughout the state.

    ■■■ Our study of the statute here under attack leads us to conclude that 1965 Perm. Supp., C.R.S. 1963, 37-14-9(2) does not violate Article V. §25 or Article VI, § 19 of the Colorado constitution. There is no dispute but that the General Assembly has the power to determine the number of district judges for each of the several judicial districts in the state. Similarly, Article VI, § 16 of the Colorado constitution provides that the General Assembly shall determine the number of county judges for each of the several counties in the state. And in a sense the General Assembly by providing for the positions of associate and assistant county judges is determining in effect the *number* of judicial officers empowered to act as county judges in a given county. In other words the General Assembly has now enabled a county to meet the situation where two county judges are perhaps not required, though there is still too much judicial work to be conveniently handled by one county judge. In reading this intent into the statute we are not unmindful that the General Assembly specifically stated that one purpose of the statute was to locate judicial officers with the power and jurisdiction of a county judge in population centers which are not county seats. In any event we hold that this is not special or local legislation of the type prohibited by our constitution. The prohibitions, as we read them, relate essentially to the organization, jurisdiction and practice of and in a given court, and not to the number of judicial officers, or the names given to them, who are authorized and empowered to preside in a particular court.

    ■■■ Respondents also argue that this is not a proper matter to be the subject of an original proceeding and that the judgments entered by the trial court could be reviewed by us on writ of error. This may well be true.

However, it should be remembered that this is basically a dispute between two courts both of which are inferior in jurisdiction to this court. We are now faced with a situation where a judge of one court has in effect "abolished" a judicial office created by the General Assembly by declaring unconstitutional the legislation which brought this particular judicial office into being. This poses a controversy which should be speedily resolved in order that there be as little disruption as possible of the orderly judicial process within this state. Article VI, § 2 of the Colorado constitution specifically declares that this court "shall have general superintending control over all inferior courts . . . ." Hence, under the circumstances related above, we have elected to exercise this power vested in us by our constitution, namely, general superintending control over inferior courts, by resolving this controversy in an original proceeding.

The rule is made absolute and the respondent judge is directed to vacate the judgments entered by him in *People ex rel. Bennett v. Sanders* and *Reed v. Howlett*.

MR. JUSTICE KELLEY not participating.