[No. 6092.]

WILLIAMS v. THE PEOPLE.

38    497
p38   514
p38   515

1. City and County of Denver—Elections—Franchises—Contests —County Courts—Jurisdiction—Charter Provisions.

Article 20, Colo. const., provides for the corporate existence of the city and county of Denver; section 4 of the article vests in the people of such city the exclusive power to make their own municipal charter; and, in accordance therewith, a charter was adopted. Section 182 of the charter provides that all cases of contested elections, except for county judges, shall be tried by the county court. Section 23, article 6, Colo. const., makes the county court a tribunal of limited jurisdiction; section 28 provides that all laws relating to courts shall be of uniform operation throughout the state; section 11, article 7, provides that the general assembly shall pass laws to secure the purity of elections; and section 12 provides that the general assembly shall, by general law, designate the courts by whom the election contests, not therein provided for, shall be tried. Held, that the gen-

32

eral assembly, in accordance with the provisions of the constitution, has exclusive jurisdiction over election contests; and that § 182 of the charter of the city and county of Denver is void, and therefore confers no jurisdiction upon the county court to hear and determine a proceeding to contest an election on the proposition of granting a franchise.—P. 502.

2. Same—Statutory Construction.

Section 182 of the charter of the city and county of Denver provides that "all cases of contested elections shall be tried under the procedure prescribed by general law by the county court," and at the time this section became effective, the only contested elections known to the laws of this state were contested elections in county seat cases and for certain public offices, and the procedure prescribed therefor was entirely inapplicable to a franchise contest. Held, that section 182, supra, referred only to contests of elections to public offices, and not to contests of franchise elections.—P. 507.

*Error to the County Court of the City and County of Denver.*

*Hon. Ben B. Lindsey, Judge.*

Special proceeding by the people, on the relation of William H. Wadley, to contest the validity of a franchise election. Frederick A. Williams was subpœnaed to testify as a witness, but refused to be sworn, upon the ground, among others, that the court had not jurisdiction of the proceeding. From a judgment of the court fining him as for contempt, and ordering his imprisonment until the fine was paid, he brings error.

Decision *en banc*.    *Reversed.*

Messrs. WARD & WARD and Mr. C. W. WATERMAN, for plaintiff in error.

Mr. JOHN A. RUSH, for defendant in error.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

Special proceeding to contest the validity of a franchise election.

By article 20 of our state constitution, adopted in 1902, there was created a body politic and corporate by the name of "City and County of Denver." By section 4 of the article, the people of the new organization are vested with the exclusive power to make their own municipal charter, but, with this limitation, *inter alia,* that a franchise relating to any street, alley or public place of the city cannot be granted except upon the vote of its qualified tax-paying electors.

Proceeding under this constitutional grant of authority, the people of Denver, in March, 1904, adopted a charter under which the municipality is now acting. Sections 265-269 thereof relate to the particular franchises described in section 4 of article 20, and, among other provisions, they contemplate that the manner of submitting to a vote the proposition of granting or refusing applications therefor shall be by ordinance.

In pursuance of this charter authority, the city council of Denver, at the regular city election held on the 15th day of May, 1906, by appropriate ordinance, submitted to its qualified tax-paying electors the proposition of granting or denying to the Denver City Tramway Company a franchise consisting of a right of way over certain streets, alleys, etc., in the city of Denver, together with the right to construct, operate and maintain a system of street railways thereon; and, by another ordinance, a distinct and separate proposition of granting or denying to the Denver Gas and Electric Company a right of way over certain streets and alleys in Denver for laying pipes, erecting poles, etc., together with a right to construct, operate and maintain a gas and electric light system in the city.

The vote thereon, as canvassed, returned and certified by the designated election officers, showed

that both propositions carried, each receiving a majority of the vote cast. Thereupon William H. Wadley, the contestor herein, assuming that the charter of the city gave him the right, as a tax-paying elector, to contest the validity of the vote thus certified as to the foregoing franchises, instituted, in the name of the People, on his relation, against each of the foregoing claimants, a separate special contest proceeding in the county court of the city and county of Denver for the purpose of setting aside such vote and invalidating the election and claimants' supposed rights thereunder, on the ground that various acts of fraud were committed by them as the result of which the *prima facie* vote was obtained.

The petitions filed show on their face that they are contest proceedings pure and simple, authority for which relator claims is found in the city charter. The respondents in each proceeding promptly challenged the power of the court to hear and determine the contest, on the ground that jurisdiction of the subject-matter was lacking, and they repeatedly renewed the challenge when an appropriate opportunity was afforded. The county court declined to pass upon the objection, though the decision necessarily must depend upon an interpretation or construction of the constitution and statutes of the state and the written charter, and wholly irrespective of the evidence on the issue of fraud, but proceeded to hear evidence upon such controverted issues of fact, and reserved for final hearing the matter of its jurisdiction. These two proceedings, and another similar one, were then consolidated for trial. Evidence was taken, and all the ballot boxes in the 211 election precincts opened and the ballots re-counted.

In the course of the hearing, the plaintiff in error, Williams, was subpœnaed to testify as a witness, and, when called into the box, refused to be

sworn, upon the ground, *inter alia,* that the court had not jurisdiction of the proceeding. The trial court then declared that, for the purpose of swearing witnesses, it would assume jurisdiction, though still reserving, till all proof was in, the question of its power to try the contested election cause itself. Williams, persisting in his refusal to be sworn, was fined by the court as for contempt, and ordered imprisoned in the county jail till the fine was paid. He did not pay the fine, and to secure his release from the imprisonment, sues out this writ of error.

Whether, and if so, in what circumstances, one subpœnaed to testify in a cause, who is not interested in the result of the litigation, may, upon the ground that jurisdiction of its subject-matter is lacking, refuse to be sworn as a witness, was not mooted below, or passed upon by the trial court; neither is it raised nor argued by any of the counsel here. The record shows that, after Williams was adjudged guilty of contempt, the court suspended proceedings, and, by stipulation of all the parties in interest, with the approval of the court, it was agreed that there should be pressed for decision in the supreme court in this writ of error only the question of the jurisdiction of the county court over the subject-matter of the contest, and, until that was determined, no further steps would be taken below. In accordance with this agreement, counsel for defendant in error, while not conceding the asserted right of this witness, forbears to press the doubt he entertains, and unites with opposing counsel and the trial court in asking for a decision on the main question. While such request is not controlling with us, yet we are persuaded that public interests will be best conserved, and unnecessary expense avoided, by complying therewith. Therefore, without intimating an opinion one way or the other concerning the propriety of the

practice, in case of an objection, which this witness invokes, we proceed to a consideration of the only question submitted for our decision.

The contestor rests this entire proceeding on section 182 of the charter, which reads:

"All cases of contested elections shall be tried under the procedure prescribed by general law by the county court, except a contest for the office of county judge, which shall be tried as prescribed by general law, and except as otherwise provided herein."

Two queries naturally arise: First, may a charter convention, held under article 20, make an election on a franchise proposition the subject of contest, or prescribe a procedure for determining the same? Second, has the charter convention by this section done so?

1. Irrespective of the individual views of the members of this court concerning the scope of, and limitation upon, the powers which, under article 20, a charter convention of the city of Denver possesses, we are all agreed that the present contention of relator has been determined against him by *People v. Johnson,* 34 Colo. 143. So long as that case is unreversed, it is as binding on those who dissented as on those who concurred in the opinion. In the opinion of the court by Mr. Justice Maxwell, the question there presented is thus stated: "Can the people of the state, by constitutional amendment, set apart any portion of the state and vest the citizens thereof with power to legislate upon matters other than those purely local and strictly municipal in their character?" To this question a negative answer was given. It was further said, in the course of the opinion:

"To concede that article 20 authorizes a charter convention to legislate upon any subject whatever, in contravention of any of the provisions of the

constitution relative to governmental or state matters, or to county or state offices and officers, is to concede that such convention might displace the constitution in every respect, and the charter, being the organic law of the city and county, would thereby become supreme within the territory included in the boundaries of the city and county.   *   *   *   To concede the right to legislate upon such matters in the slightest particular, must be to concede the right to legislate on all matters."

The court, after stating the result of its prior decisions upon analogous questions, thus stated its final conclusion: "That the authority of the charter convention to legislate under article 20 of the constitution is limited to matters purely local and municipal in their character."

The contestor renews the discussion of the same questions that were ably argued by counsel and thoroughly considered both in the opinion of the court and in the dissenting opinion of Justice Steele in the Johnson case, and asks us to reconsider and set aside our conclusion, and make a new and different announcement.

In support of his various positions he cites, and at length comments upon, a number of cases from Missouri and California, most, if not all, of which were considered in the Johnson case and there held, under our constitution and laws, either not applicable or not controlling. He now asserts that not a single one of them supports our decision, but, on the contrary, each and all are radically and diametrically opposed thereto. Were it important or necessary, the majority think it would not be difficult to demonstrate that, in view of the essential differences between the pertinent constitutional and statutory provisions of Colorado and those of Missouri and California, their cases could be reconciled with ours.

But, were this not so, still, if counsel is correct in his characterization, and these decisions are opposed to that in the Johnson case, they must be disregarded, and the latter followed. We therefore are not disposed to reconsider the Johnson case, but content ourselves with the foregoing reproduction from the opinion of the court therein as indicating the basis for the decision here on this branch of the case.

There remains for us merely to apply the principle of that case to this, and inquire if section 182 legislates with reference to purely local or strictly municipal matters, which are within the scope of the charter, or whether it relates to governmental, state, or county matters, which are exclusively within the purview of the general assembly. If this section falls under the former class, it is valid; if not, it is void.

The relator maintains, and, of course, must maintain, that section 182 is a piece of legislation, that it creates a right to contest a franchise election, and invests the county court with jurisdiction to try and determine the same. It may be conceded that the granting of a franchise is a municipal function, but it does not follow that a judicial investigation to determine whether a franchise is properly granted as the result of an election is a municipal function, or that it is competent for the municipality to confer upon a state court jurisdiction to make such investigation. That this assumed legislation, which obviously relates to matters of a governmental and state character, is, in view of at least three specific sections of our constitution, inhibited, is readily apparent.

Section 23 of article 6 makes of the county court a tribunal of limited jurisdiction, and, after designating certain matters of which it shall have cognizance, adds: "And such other civil and criminal jurisdiction as may be conferred by law." Section

28 of the same article requires that: "All laws relating to courts shall be general and of uniform operation throughout the state; and the organization, jurisdiction, powers, proceedings and practice of all the courts of the same class or grade, so far as regulated by law,   *   *   *   shall be uniform."

Such other jurisdiction as may be conferred by "law," as that word is used in section 23, obviously means "law" which is enacted by the legislative department of the state government which the constitution has created; and "law," found in section 28, is of the same character.

If, then, jurisdiction of county courts, other than that specifically given by the constitution itself, can be conferred on county courts, and the uniform procedure demanded by the constitution prescribed, only by laws enacted by the general assembly, it necessarily follows that the charter convention by its charter, or the city council by its ordinance, though each instrument is a law local and municipal in its nature and controlling in local matters, cannot legislate with respect to the jurisdiction and procedure of the state courts, which necessarily are matters of governmental nature and state importance, and reserved exclusively for action by the general assembly.

In section 11 of article 7 of the constitution, the duty is enjoined on the general assembly to "pass laws to secure the purity of elections, and guard against abuses of the elective franchise"; and by section 12 it is provided: "The general assembly shall, by general law, designate the courts and judges by whom the several classes of election contests, not herein provided for, shall be tried, and regulate the manner of trial, and all matters incident thereto." If there is such a thing as an election contest of a franchise, it is conceded that it is within the purview

of this section. In these two sections, we have express constitutional commands that the general assembly shall pass "laws" to secure the purity of elections, and by "general laws," designate the courts and judges by whom the several classes of election contests shall be tried. If, then, the general assembly, with respect to these election matters which are of governmental and state importance, has jurisdiction over election contests, which contestor says is the subject-matter included in section 182 of the charter, such jurisdiction in the general assembly is exclusive, and manifestly neither the charter of the city, nor an ordinance of its council, which must be confined to matters strictly local and municipal in their character, can legislate concerning it.

But contestor, while conceding that election contests are unknown to the common law, and exist, if at all, as the result of some affirmative legislative enactment having the force and effect of a statute of the general assembly, still insists that it is competent for the charter convention, by its charter, to create not only an election contest, but to invest a state court with jurisdiction to try it under a procedure by it furnished, because, as he puts it, a charter is a law of equal dignity and authority with, or even superior to, a statute passed by the general assembly. With respect to purely local and municipal matters, the charter may be, and doubtless is, the paramount law, except as limited by provisions of the state or federal constitutions. But, as we have already decided, it is confined to such local concerns, and cannot invade the field of county or state legislation at all, and, as to such matters, the general assembly is both supreme and exclusive except as limited by the constitution. While it is true that the charter is a "law," in the sense above limited, it is not a "law" as to county or state or governmental affairs. Our

constitution expressly says that election contests shall be tried by courts or judges designated by the general assembly by general law. This necessarily negatives the existence of any such authority in any other legislative body.

Finally, contestor says that this court is committed to the doctrine that a charter convention has the legislative power claimed, and cites a number of cases which he says so declare. These cases construed various sections of the special territorial charter of the city of Denver (under which it was operating until the present charter of 1904 was adopted), together with the various amendments thereto made at different sessions of the general assembly of the territory and state. *Rogers v. The People*, 9 Colo. 450, is a good example of these cases. The decisions in all of them show that they were based upon the fact that the state constitution itself saved to the municipality of Denver the rights secured by its territorial special charter, and, for that reason, all statutes fairly amendatory thereof passed by the general assembly after the adoption of the constitution were not inimical to the constitutional inhibition against special and local legislation; that, because of such saving clause, various other constitutional provisions were not applicable to that municipality. These decisions are in no sense authority for contestor's contention.

2. There is another and equally substantial reason why the county court was without jurisdiction even if the charter could confer it. The language of section 182 is: ''All cases of contested elections shall be tried under the procedure prescribed by general law by the county court.'' Mark the language. It is not said that all elections held by the municipality may be contested, but ''all cases of contested elections'' shall be tried, etc. This language does

not give the right to an elector to contest a so-called election franchise unless such election has previously been made the subject of a contest by some competent authority. At the time section 182 became effective, the only contested elections known to the laws of this state were contested elections in county seat cases and for certain public offices. Manifestly the charter was not attempting to make a new contested election, for the only procedure prescribed by the general law of the state was that for contested elections of these two mentioned classes. That the procedure applicable to county seat contests cannot be made to fit a franchise contest, needs no argument to show. The procedure prescribed for contests of public offices is equally inapplicable. The section does not say that the procedure prescribed by general law shall be followed so far as the same is applicable, but shall be followed, thereby indicating that the contested elections the charter had in view were of the sort for which an existing procedure had been provided, and as the only procedure then existing which was applicable was that prescribed for contesting elections to some public office, the charter must have referred in this section only to contests of elections to public office.

For both of the foregoing reasons—first, that neither the charter nor a city ordinance can confer the jurisdiction claimed; and, second, that, if it could, it has not done so—the county court was entirely without jurisdiction of this proceeding, and had not the power to hear or determine the alleged contest. It could not, therefore, render any valid order therein except a dismissal at the costs of the relator.

I am authorized to say that Mr. Justice Steele is of opinion that the court is correct in holding that

public interests require the main question to be determined without regard to the fact that it is raised by a recalcitrant witness, and that the court is correct in holding that, under the decision in the case of *People v. Johnson,* the charter convention had not power to confer jurisdiction upon the county court to hear and determine contested election cases; he is also of opinion, however, that the decision in the Johnson case is wrong in principle, and should be reconsidered and reversed.

Upon the other branch of the case, he expresses no opinion, as, in his judgment, the decision in the Johnson case is decisive of this.

The necessary conclusion is, that the judgment against the plaintiff in error was void, and should be reversed.                              *Reversed.*

Decision *en banc,* all the justices concurring.