THOMAS S. REILLY AND STATE OF NEW JERSEY, *EX REL.* THOMAS S. REILLY, PLAINTIFFS-APPELLANTS, v. WILLIAM E. OZZARD, DEFENDANT-RESPONDENT.

Argued September 26, 1960—Decided December 5, 1960.

530

534

*Mr. George J. Shamy* and *Mr. Richard H. Thiele, Jr.* argued the cause for appellants (*Messrs. Pincus, Shamy & Sheehan,* attorneys; *Mr. Richard H. Thiele, Jr.* and *Mr. Robert W. Hallgring,* on the brief).

*Mr. Leon Gerofsky* argued the cause for respondent (*Messrs. Gerofsky & Bowlby,* attorneys).

*Mr. Walter H. Jones* argued the cause for New Jersey Senate and New Jersey Assembly, *amici curiae.*

*Mr. Samuel Rosenblatt* argued the cause for New Jersey Institute of Municipal Attorneys, *amicus curiae* (*Mr. Samuel Rosenblatt* and *Mr. Nicholas H. Hagoort, Jr.,* on the brief).

The opinion of the court was delivered by

WEINTRAUB, C. J. The ultimate question is whether the common law doctrine prohibiting dual holding of incompatible offices bars a member of the State Senate from holding the post of township attorney. The trial court held the doctrine inapplicable. We certified the ensuing appeal upon our motion before the Appellate Division acted upon it.

## I.

We must first consider constitutional objections advanced by defendant. One is that since the *Constitution* defines eligibility for membership in the Legislature (*Art.* IV, § I, *par.* 2), no further requirement may be added, *Imbrie v. Marsh,* 3 *N. J.* 578 (1950), and an application of the common law doctrine to a member of the Legislature would have that forbidden effect. Another is that, if the common law doctrine does apply, nonetheless the Judiciary may not act since each house of the Legislature is "the judge of elections, returns and qualifications of its own members" (*Art.* IV, § IV, *par.* 2) and has the power of expulsion (*Art.* IV, § IV, *par.* 3).

## A.

The claim that dual officeholding by legislators may not be barred under the common law doctrine because the *Constitution* specifies qualifications for membership goes beyond questioning an application of that doctrine. If sound, the objection would block as well statutory regulation of the subject. So, for example, *R. S.* 19:3–5, which prohibits certain officeholding by legislators, would be invalid to the extent that it exceeds the express constitutional limitations upon dual officeholding by legislators (*Art.* IV, § V, *pars.* 1, 3, and 4). We refer to the sweeping import because the very reach of the claim casts doubt upon it.

An individual does not move beyond the restraints of law, common or statutory, when he accepts membership in the Legislature. He remains subject to them except insofar as they preclude acceptance of legislative office by one constitutionally qualified for it or impair performance of legislative duties. Prohibiting a legislator to hold another office neither denies eligibility for legislative membership nor frustrates the discharge of the duties of a legislator. Eligibility for office is one thing; the right to pursue governmental activities extraneous to the office of legislator is something else. *Cf. In re Hess,* 128 *N. J. L.* 387 *(Sup. Ct.* 1942).

## B.

We do not doubt the jurisdiction and duty of the courts to decide controversies of this character. A judicial determination that a legislator may not hold another office does not trench upon the authority of each house to judge the elections and qualifications of its members or to expel them. Again, the reach of the objection should be noted. If it were sound, it would bar as well judicial enforcement of a statutory restriction, such as contained in *R. S.* 19:3–5, since with respect to a court's power to act there can be no distinction between a statutory prohibition and a common law one.

We think the issue was settled in *Wilentz ex rel. Golai v. Stanger,* 129 *N. J. L.* 606 *(E. & A.* 1943). It is urged that case dealt only with the enforcement of a constitutional provision. Emphasis is placed upon the concluding reference to the court's "supreme authority to decide the constitutional questions" *(p.* 617). The case in part dealt with the constitutional provision for the separation of powers distributed among the branches of government and hence the quoted statement was made. But the court did not confine its jurisdiction to constitutional interpretation. On the contrary, the court there considered and decided the issue of

common law incompatibility. We see no room in the judicial article of the *Constitution, Art.* VI, § I *et seq.*, to distinguish between enforcement of a constitutional provision and enforcement of a non-organic provision. If the Senate were the exclusive judge of one, it would also be of the other. The Judiciary is competent to deal with both or neither.

We can find no grant to the Senate of exclusive authority to deal with the external activities of its members. Nor is it to be implied by necessity to assure the Senate the independence its members need to discharge their assigned role in government. On the contrary, it appropriately rests within the jurisdiction of the whole Legislature to legislate upon the subject, and within the jurisdiction of the Judiciary to enforce such restraints as statutes or the common law may validly prescribe.

## C.

The constitutional objections had another facet when the matter was before the trial court. As the facts then were, defendant had first been elected to the Senate and thereafter had accepted the post of township attorney. Under the conventional statement of the common law doctrine, acceptance of the later office vacates the earlier. *Kobylarz v. Mercer,* 130 *N. J. L.* 44, 46 (*E. & A.* 1943). Defendant contended that his office of senator could become vacant only for causes specified in the *Constitution* and that dual officeholding violative of the common law doctrine was not one of them. Pending appeal, defendant was re-elected senator and hence the post of township attorney became the earlier one. Thus the doctrine, if applicable, would now jeopardize the municipal post rather than the legislative one. Hence the question whether the office of senator could be declared vacant left the case. Defendant nonetheless presses it upon this appeal. We see no barrier to a suitable remedy if the dual officeholding presents the evil the common law denounced. Should the *Constitution* protect against loss of the legislative office, the legislator would be barred from

holding another incompatible office. It is a simple matter to shape the relief to avoid a constitutional difficulty if there be one. *Cf. Monaghan v. School Dist.,* 211 *Or.* 360, 315 *P. 2d* 797, 799 *(Sup. Ct.* 1957).

## D.

Next, defendant contends the *Constitution* itself exhausts the subject of dual officeholding by legislators and thus supersedes any common law doctrine which otherwise might have applied. Reference is made to several provisions.

*Article* III, *par.* 1 reads:

"1. The powers of the government shall be divided among three distinct branches, the legislative, executive, and judicial. No person or persons belonging to or constituting one branch shall exercise any of the powers properly belonging to either of the others, except as expressly provided in this Constitution."

More specifically, *Article* IV, § V, *par.* 3 provides:

"3. If any member of the Legislature shall become a member of Congress or shall accept any Federal or State office or position, of profit, his seat shall thereupon become vacant."

And *par.* 4:

"4. No member of Congress, no person holding any Federal or State office or position, of profit, and no judge of any court shall be entitled to a seat in the Legislature."

Defendant says the post of township attorney is not a "*State* office or position" (emphasis added) within the meaning of these provisions, and plaintiff does not disagree. Defendant points out that the Convention received specific proposals that legislators be barred from holding office under local government (3 *Constitutional Convention of* 1947, *pp.* 689, 851, 898) and a monograph upon the subject expressly referred to a provision in the constitution of Arizona to that effect (*Vol. 2, p.* 1477). In this setting, defendant

urges the *Constitution* deals completely with the problem and bars any further restraint upon dual officeholding by members of the Legislature.

The most that can be said from the record of the Convention is that a more sweeping ban was suggested but not accepted. We see no basis to invoke the maxim, *expressio unius est exclusio alterius.* The maxim at best is a mere aid to interpretation. Perhaps more accurately, it usually serves to describe a result rather than to assist in reaching it. The final question is whether in a given context an express provision with respect to a portion of an area reveals by implication a decision with respect to the remainder. The issue is one of intention. The answer resides in the common sense of the situation.

A constitution does not resolve all policy problems. Rather it establishes the framework of government with such specific restraints as are thought to be of eternal value and hence worthy of immunity from passing differences of opinion. If the sense of the situation suggests that an affirmative specification was meant to be exclusive, as, for example, a statement of the qualifications for office, no more may be added. *Imbrie v. Marsh, supra,* 3 *N. J.* 578 (1950). On the other hand, for further example, the fact that the *Constitution* assures absentee voting by military personnel does not deny the Legislature a voice in the policy question whether a like opportunity should be granted to civilian absentees. *Gangemi v. Berry,* 25 *N. J.* 1 (1957).

Where, as here, the constitutional provision is prohibitory in nature, it surely can not mechanically be inferred that what was not prohibited was thereby affirmatively guaranteed. The decision to prohibit is simply a decision to foreclose a contrary view as to the area dealt with. What is left untouched remains within the jurisdiction of government. Here the Convention determined, and the people agreed, to bar dual officeholding within the stated terms. They did not thereby ordain that all other officeholding by legislators shall be constitutionally protected.

It may be added the proposition advanced would prevent restrictive action by the Legislature itself, and would invalidate *R. S.* 19:3–5, referred to above, to the extent to which it exceeds the ban of the constitutional provisions. Although the aim of the argument is to disable the Judiciary from applying the common law, the assault can not be thus confined. The matter is either frozen by the *Constitution* or remains subject to law, be it statutory or common.

 It is convenient to consider at this point the claim that *R. S.* 19:3–5 exhausts the subject. The statute reads in part:

"No person shall hold at the same time more than one of the following offices: elector of president and vice president of the United States, member of the United States senate, member of the house of representatives of the United States, member of the senate or of the general assembly of this state, county clerk, register, surrogate, sheriff or coroner."

It has been held that this enactment did not authorize dual officeholding beyond the terms of its interdiction and thus erase the common law doctrine. *Kobylarz v. Mercer, supra* (130 *N. J. L.,* at *p.* 48). There involved were the office of mayor and a military office. It is true the statute speaks specifically of a member of the Legislature and hence there is more apparent substance to reliance upon it in the present case. But again, the Legislature merely prohibited what it found to be contrary to the public weal, and perhaps did so without regard to whether the offices were incompatible under the common law. We can not say the Legislature thereby intended to abolish the common law elsewhere by implication.

## II.

Hence we reach the issue whether the office of senator and the post of township attorney are incompatible under the common law.

## A.

 It is contended the doctrine applies only to "offices" and the post of township attorney is not of that character.

That the doctrine is limited to "offices" was held in *Wilentz ex rel. Golat v. Stanger, supra* (129 *N. J. L.* 606). Plaintiff argues with much force that distinctions separating "office" from "position" and "employment," even if useful in other situations, are here inappropriate. Glasser, "A New Jersey Municipal Law Mystery: What Is a 'Public Office'?," 6 *Rutgers L. Rev.* 503, 504 (1952). The reasonableness of a classification depends upon the objective. Women may be differentiated from men in matters of health but not with respect to larceny or drunken driving. The question is whether the public evil which the doctrine of incompatibility was designed to meet is any less because one of the posts is other than an "office." The question would be in perspective if a governing officer of a municipality claimed the right to serve under his own direction in another municipal post upon the thesis that it was something less than an "office." Parenthetically it may be noted that, doubtless in response to *Stanger*, *Article* IV, § V, *pars.* 1, 3, and 4 of the present *Constitution* speak of "office or position" (emphasis added) whereas the *Constitution of* 1844 (*Art.* IV, § V, *pars.* 1 and 3) spoke merely of "office." We need not however pursue the matter since, as we shall presently develop, the post of township attorney is an "office" within the purpose of the doctrine.

## B.

It is argued that from the nature of his profession an attorney can be only an independent contractor. Reliance is placed upon *Ewart v. Commissioner,* 98 *F. 2d* 649 (3 *Cir.* 1938). The court held that upon the record before it the attorney there served the municipalities as an independent contractor. The context was liability to federal income taxation. The case does not hold the inherent nature of an

attorney's service is such as to preclude the creation of an office for their rendition. True, in the general practice an attorney is ordinarily an independent contractor, but in both public and private affairs he may assume another relationship. Attorneys are commonly employed as house counsel by corporate employers. So in the public domain, although an attorney may be engaged in individual matters as an independent contractor, yet he may assume another status. Government needs professional services of many types, legal, medical, engineering, and if the need is sufficient to induce the creation of a post for their rendition, the incumbent is not an independent contractor merely because the services are professional in nature. Surely the Attorney General and the county prosecutor are not independent contractors. They hold office. *State ex rel. Clawson v. Thompson,* 20 *N. J. L.* 689 (*Sup. Ct.* 1846).

The definition of an office depends upon the context. See 2 *Antieau, Municipal Corporation Law* (1955), § 13.00, at *p.* 209. For present purposes, it may be sufficiently defined as a post created or authorized by constitution or statute for the continuous exercise of a portion of governmental power or authority. See *Thorp v. Board of Trustees of Schools for Industrial Educ.,* 6 *N. J.* 498, 507, vacated as moot, 342 *U. S.* 803, 72 *S. Ct.* 35, 96 *L. Ed.* 608 (1951). That the post of township attorney partakes in some degree of political power or governmental authority seems clear. The role of the lawyer is threaded throughout government. It includes advice, the preparation of indispensable instruments, and the prosecution of the civil and criminal business of the public. The need is so apparent that the Legislature either directed or authorized the creation of a legal post in local government. And in so doing it has consistently characterized the post as an "office." See *R. S.* 40:21-59 and *N. J. S. A.* 40:21-60 (counties); *R. S.* 40:46-4 and *N. J. S. A.* 40:46-14 (municipalities generally); *N. J. S. A.* 40:81-11 (municipal government); *N. J. S. A.* 40:87-15 (boroughs); *N. J. S. A.* 40:125-1 (towns); *R. S.* 40:145-12

(townships); *R. S.* 40:158–7 (villages); *R. S.* 40:171–47, 48, 113, 114, 148, 195 (cities). It has affirmatively imposed a duty upon the municipal attorneys to prosecute specific violations. See *R. S.* 39:5–20, as amended; *N. J. S. A.* 51:9–11. We see no reason to deem the statutory description of the post as an "office" to be ineffectual. Indeed our cases also so describe it. *State v. Weleck,* 10 *N. J.* 355 (1952) and cases collected in *Glasser, op. cit. supra,* 6 *Rutgers L. Rev.,* at *p.* 522 n. 50. *Stanger, supra,* is not to the contrary. Although the post was there held not to be an "office," yet the court recognized that "the place of legal adviser to a public body may, by suitable statutory provision and endowment with sovereign duties and other appropriate indicia of rank in the public service, be constituted as an office," (129 *N. J. L.,* at *p.* 615). And the weight of authority elsewhere holds the municipal attorney to be an officer *Rhyne, Municipal Law* (1957), § 8–2, at *p.* 118.

We see no reason to deny the post the status of an office within the purpose of the doctrine of incompatible offices. If a member of a governing body attempted simultaneously to serve in the subordinate role of municipal attorney, quite obviously there would arise the evil at which the common law doctrine was aimed. A municipal attorney was held an officer within the common law doctrine in *People ex rel. Chapman v. Rapsey,* 16 *Cal.* 2*d* 636, 107 *P.* 2*d* 388 (*Sup. Ct.* 1940).

## C.

 We come accordingly to the question whether the office of municipal attorney is incompatible with the office of senator. Incompatibility is usually understood to mean a conflict or inconsistency in the functions of an office. It is found where in the established governmental scheme one office is subordinate to another, or subject to its supervision or control, or the duties clash, inviting the incumbent to prefer one obligation to another. *Jones v. MacDonald,* 33 *N. J.* 132 (1960); Annotation 1917A *L. R. A.* 216.

There is no conflict between senator and township attorney in any of the conventional applications of the doctrine. The legislature has no power in any judicial, executive or administrative sense to interfere with, supervise or review the performance of an incumbent in local office. Nor does it have the power to appoint to or to remove from local office.

Plaintiff suggests a conflict in duties would arise whenever legislation is considered which may affect the interests of the municipality. The assumption is that the municipal attorney, as such, has a duty to lobby, which duty would conflict with the duty to legislate.

Lobbying is not a part of the practice of law. Although *Canon* 26 of the *Canons of Professional Ethics* contemplates an attorney "may render professional services before legislative or other bodies, regarding proposed legislation" and regulates his behavior if he is so engaged, it does not follow that such activity constitutes the practice of law. Not infrequently an attorney is engaged for services beyond his professional franchise. He may lawfully render such services, not because they are part of the practice of law, but rather because an attorney is not restricted to the practice of his profession. So, although an attorney may be engaged to address the Legislature, the practice of law does not embrace an exclusive right to advocate or oppose bills in the legislative precincts. Hence lobbying is not a duty of a municipal attorney merely because he is an attorney.

That local government has the *right* to seek or to oppose legislation affecting its interests is settled. *City Affairs Committee of Jersey City v. Jersey City,* 134 *N. J. L.* 180 (*E. & A.* 1946); *In re Carrick,* 127 *N. J. L.* 316 (*Sup. Ct.* 1941). Whether a municipality is under a *duty* to do so is another matter, and whether that duty, if it exists, attaches to a specific office in local government, we need not inquire. It is enough to say that it is not inherently a lawyer's role and that in the present case the

ordinance defining the duties of the township attorney does not impose that obligation and we know of no statute which does.

We do not suggest a legislator may accept an engagement for pay on behalf of a municipality to introduce or oppose legislative proposals. Quite obviously a legislator, whether or not a lawyer, could not lawfully be so engaged by any interests, public or private. And if the office of municipal attorney (or any other local office) were specifically charged with the duty thus to lobby, that obligation would plainly be incompatible with the duty of a legislator and would bar dual holding of the offices. Here, however, the office of township attorney does not hold that duty and hence defendant does not face the prospect as legislator of passing upon a position advanced in discharge of a duty of his other office.

It is here appropriate to explore the theme of the dissenting opinion to be filed in this matter. The dissent starts with a discussion of the subject of *conflict of interests* as distinguished from *conflict of duties*. It quotes a passage from *DeFeo v. Smith, infra* (17 *N. J.,* at *pp.* 188–189), in which successive paragraphs speak of "the possibility of *conflicting interests*" and "the possibility of a *conflict in the obligations* of the positions in relation to the public interest." (Emphasis added) The dissent does not suggest *DeFeo* holds a possible *conflict of interests* results in incompatibility of offices at common law, and quite clearly *DeFeo* did not intend to convey that thought. The question was not involved, and the case turned upon a finding of a conflict in *duties*.

The dissent here does not conclude, as we read it, that a possibility of a *conflict of interests* results in incompatibility of offices. We will discuss that subject more fully in "D" below. That a possible conflict of interests inheres in the present scene is obvious. It, however, is by no means indigenous to the roles of legislator and municipal attorney. On the contrary, it inheres in any local officeholding by a

legislator. Indeed it is more pronounced if the legislator holds a local office which has the authority to make the policy decision to seek or to oppose legislation, a power which does not repose in the municipal attorney. It exists also with respect to the possible direct impact of legislation upon a local office itself, a possibility equally evident if the legislator be a municipal attorney or a school teacher or an assessor or a member of a planning board, etc. Even local *residence* (not required of a municipal attorney, *N. J. S. A.* 40:46–14) spells out a possible conflict of interests if the welfare of the municipality should become pitted against the welfare of others in the county or state. On occasions a judge will decline to sit in a case involving the municipality in which he lives although that circumstance is not legally a disqualifying one.

If the possibility of a *conflict of interests* were the touchstone for decision, the office of municipal attorney would be indistinguishable from any other local office. The dissent, as we have said, does not adopt that test, but rather adheres to the standard we apply. It is in the application of that standard, *i. e.,* a conflict of *duties,* that the opinions in this case part company.

The dissent finds a conflict in the *duty* of a municipal attorney with the *duty* of a legislator in these respects: (1) rendition of legal advice to the municipality, (2) drafting of proposed legislation, and (3) the processing of bills in the legislative hall.

■ As to the first, we are unable to detect any conflict between the duty to legislate and the duty to advise with respect to the meaning of bills or statutes.

■ As to the second, many bills are prepared and perhaps most are redrafted routinely by the Division of Law Revision and Bill Drafting, a part of a legislative agency (*L.* 1954, *c.* 254, § 13c; *N. J. S. A.* 52:11–18c), at the behest of individual legislators. Doubtless, however, some are prepared by the municipal attorney and we agree it is his duty to do so if his superiors so direct. But if he

should draw a bill, there is no conflict with the *duty* of a legislator. The conflict involved in legislation revolves about the *policy* issue which a bill projects, and as to that issue the authority to decide to advocate or oppose legislation clearly is not within the office of the municipal attorney. He acts only after the policy decision is made by others; and as the draftsman of the bill he is no more the author of the policy than is an attorney who prepares a last will and testament upon a plan of disposition his client prescribes. Just as the draftsman of a will may deplore the testator's wishes, so a municipal attorney may disagree with the policy decision he is asked to embody in a proposed bill. Surely a municipal attorney could not refuse to draft a lawful document merely because he disliked the policy decision of his superiors. The point is that the duty to act as a scrivener is not incompatible with a legislator's duty to pass upon the merits of a bill. If the dissent means that a municipal attorney may feel some compulsion to prefer his client's interests when he acts as legislator, we of course agree the possibility is evident, but it is no more or less so whether the bill is prepared by the attorney or by someone else. That conflict is one of *interests,* and it springs from his connection with the municipality rather than from a duty to act as scrivener of a bill, and in kind is no different from the conflict which any local officeholding or employment may induce in a legislator.

Finally the dissent finds it is the municipal attorney's duty to represent his client in the legislative process. It obviously is not the attorney's duty to introduce a bill; indeed he has no power as attorney to do so. And with respect to persuading legislators for or against a bill or appearing at legislative hearings (a rare event in our State), the function is not inherently that of an attorney and hence is not impliedly the obligation of that office. It is commonplace for a mayor or other local official to assume that role, and we think it quite plain that such official could not be adjudged guilty of illegal practice of the law if he be not

a lawyer. Anyone familiar with the scene at the State Capitol knows that private interests (and associations of public employees) frequently select non-lawyers to lobby for them. As we have already said, that role *may* be assigned to the municipal attorney (or to another local officer), and *if it is,* that office would then become incompatible with the office of legislator, but the duty not being the inherent obligation of the attorney's office, incompatibility in terms of *duties* cannot be found in the absence of an assignment of that obligation to that office.

Hence we are satisfied that here the possibility of a conflict lies in the area of interests rather than in the duties of office. If the common law prohibited local officeholding by a legislator because of the possibility of a conflict of interests, a remedy exists and it is within the authority of the courts to enforce it. If however the common law ban did not reach the subject, then the Legislature alone can cut the knot; the court could but nibble at it in those instances in which the possibility of some incidental conflict of duties might be detected. The court should act if a conflict of that kind appears even at the periphery of a particular scene, but we should be satisfied that at least a slender reed does exist. It is well to be mindful that an indirect approach to the basic problem of conflict of interests may hinder a forthright solution, for if it suggests to others that a solution is already on hand, it may obscure the responsibility of the legislative branch to deal with the total problem in a comprehensive and decisive manner.

### D.

Although plaintiff rests his attack upon a claim of conflict in *duties* of the offices, the argument before us branched into the larger question, whether under the common law a legislator may hold *any* local office in view of a possible conflict of *interests* with respect to legislation affecting either his office or the municipality's welfare.

A ready answer can not be found in the traditional definition of the common law doctrine. As we have said, the doctrine in its specific applications has been applied to incompatibility in the *functions* or *duties* of office. The doctrine, however, is also expressed more vaguely to embrace an "inconsistency of *nature,* duty, or function which, from considerations of sound policy, cannot be lodged in one and the same functionary at one and the same time." *DeFeo v. Smith,* 17 *N. J.* 183, 187 (1955) (emphasis added). Does a possibility of a conflict in interests come within the concept?

▪ ▐▐▐▐ This much is clear. The doctrine does not denounce *all* dual officeholding. "Dual officeholding, as such, is not forbidden by the common law. Incompatibility is an essential ingredient of the doctrine." *Kobylarz v. Mercer, supra* (130 *N. J. L.,* at *p.* 46).

There is a difference between the subject of incompatible offices and the subject of conflict in *interests.* In the former, a clash of *duties* inheres in the very relationship of one office to the other and is contemplated by the scheme of governmental activities, albeit the occasions may be rare. The consequence will be the nonperformance (or the questionable performance) of one or the other of the prescribed duties. On the other hand, a conflict in interests by virtue of a dual officeholding by a legislator will not inevitably arise as an incident of the relationship of the two offices. It may arise depending upon what bills are introduced. If it should, the incumbent is not put to a choice of duties. Rather the conflict relates to the duty of one office, the legislative seat. It is true that, if a conflict of interests should arise, it may cast a cloud upon the objectivity of the exercise of legislative discretion. Yet the possibility of a conflict of interests is not peculiar to the case of duality of officeholding by a legislator. Rather it is part of a larger problem which inheres in the nature of the legislative authority and confronts all members of that department of government. This is so because the police power and the

taxing power range so widely that every legislator, whether he be in a private calling or in another public post or in neither, must inevitably have some interest which may conceivably be affected by some legislative proposal at some time. We are not discussing the effect of an *actual* conflict of interests. Plainly the common law dealt with that subject and forbade an officer from acting in a particular matter permeated by an *actual* conflict. See, for example, *Griggs v. Princeton*, 33 *N. J.* 207 (1960). Rather, the question is whether the common law forbade the holding of office because of a possibility of a future conflict of interests. As we have said, the possibility of a conflict of interests is inevitable in a legislator. Of course conflicts of that kind vary in intensity from the distant and inconsequential to the immediate and severe. And it may well be that public policy warrants excising from the total scene the possibility of a conflict of interests generated by additional public office-holding and employment. Indeed in some jurisdictions, organic law expressly forbids a legislator to hold local office. We referred above to the constitution of Arizona. See also *Goodloe v. Fox*, 96 *Ky.* 627, 29 *S. W.* 433 (*Ct. App.* 1895); cf. *Padron v. People of Puerto Rico ex rel. Castro*, 142 *F. 2d* 508 (1 *Cir.* 1944), *certiorari* denied, 323 *U. S.* 791, 65 *S. Ct.* 427, 89 *L. Ed.* 630 (1945). And as we have already said, our Legislature, which is the ultimate authority with respect to this issue, may constitutionally prohibit it. The question before us, however, is not whether it is unsound for a legislator to hold local office but rather whether the common law doctrine of incompatibility reached into the area of possible conflicts of interests and forbade such dual officeholding because of it.

No precedent in our State suggests a legislator is barred from local office by the common law doctrine. Elsewhere there is little discussion of the subject. In New York, it was expressly held there is no common law incompatibility. *People ex rel. Ryan v. Green*, 58 *N. Y.* 295 (*Ct. App.* 1874); *People ex rel. Gilchrist v. Murray*, 73 *N. Y.* 535 (*Ct. App.*

1878) ; *Stewart v. Mayor, etc., of City of New York,* 15 *App. Div.* 548, 44 *N. Y. S.* 575 (*App. Div.* 1897). A contrary conclusion was reached by a majority of the court in *Weza v. Auditor General,* 297 *Mich.* 686, 298 *N. W.* 368 (*Sup. Ct.* 1941). There the office of county school commissioner was held to be "subordinate" to that of a member of the legislature because (298 *N. W.,* at *p.* 368) :

"The former owes its creation and continuation to legislative enactment and is completely subject to legislative control [as to eligibility, duties and emoluments]. Further, as a matter of sound public policy these two offices should be held incompatible. If a controlling faction in the legislature was composed of county school commissioners, it is conceivable that the legislature might materially increase salaries of county school commissioners, enlarge their powers, or diminish their duties."

No authority was cited to support the proposition that the office is "subordinate" to the office of legislator as the term is used in the statement of the common law doctrine. There surely is neither subordination nor control in any executive, administrative, or judicial sense. The dissenting opinion, applying the usual test of repugnancy or inconsistency in the functions of offices, held the common law doctrine inapplicable. The case seems never to have been cited.

It is not disputed that historically legislators in our State have held local office as some now do. If illegality were clear, prior practice could not excuse it, *State ex rel. Rogers v. Taggart,* 118 *N. J. L.* 542, 547 (*Sup. Ct.* 1937), affirmed 120 *N. J. L.* 243 (*E. & A.* 1938), but in ascertaining the sweep of a common law doctrine of uncertain limits, we can not wholly ignore what transpired without challenge, especially since the facts were necessarily known and political motivation to question is rarely lacking. We know of no instance in our State in which it was suggested that under the common law a legislator may not hold a local office. This thesis did not occur to plaintiff. And we note that in *Rogers v. Taggart, supra,* in which it was

held that a judge of the recorder's court could not also hold a legislative seat because he was a judge "of any court" within *Article* IV, § V, *par.* 3 of the *Constitution* of 1844, it apparently was assumed that a local office, if non-judicial in character, would be another matter. At least the contrary thought was not advanced even though it would appropriately have been an alternative response to defendant's thesis that his office of recorder was a municipal one and hence not a "court" within the meaning of the constitutional provision. So, too, in *State ex rel. Robibero v. Hillery,* 137 *N. J. L.* 96 (*Sup. Ct.* 1948), in which there was raised, but not decided, the question whether an assemblyman may hold the office of mayor under the constitutional provision discussed in *Taggart,* no mention was made of the common law doctrine as a possible basis for attack. Further, if a possibility of a conflict of interests had been understood to bar a legislator from any office which may be affected in its being, duties or emoluments, there would have been no need for *R. S.* 19:3-5 to restrict officeholding by legislators. And in other jurisdictions in which the state constitution or statute was held not to bar legislators from local office, the possibility that the common law might be a barrier was not discussed. *Carpenter v. People ex rel. Tilford,* 8 *Colo.* 116, 5 *P.* 828 (*Sup. Ct.* 1885); *Commonweath ex rel. Woodruff v. Joyce,* 291 *Pa.* 82, 139 *A.* 742 (*Sup. Ct.* 1927); *Phillips v. West,* 187 *Tenn.* 57, 213 *S. W. 2d* 3 (*Sup. Ct.* 1948); *Boswell v. Powell,* 163 *Tenn.* 445, 43 *S. W. 2d* 495 (*Sup. Ct.* 1931); *cf. State ex rel. Baca v. Otero,* 33 *N. M.* 310, 267 *P.* 68 (*Sup. Ct.* 1928).

■ The evidence of the understanding of bench, bar and legislators discussed in the preceding paragraph of course does not reveal positive determinations that the common law doctrine is inapplicable. But the question is not whether precedents can be found which deny the common law doctrine applied, but rather whether there is reliable evidence that it did; and in that inquiry, the negative circumstances to which we have referred significantly support our con-

clusion that there is no substantial evidence that the common law doctrine embraced the situation before us.

██ ██ The matter is of obvious public interest and hence we should add a word about the respective responsibilities of the several branches of government under our *Constitution*. Except as to offices created by the *Constitution*, public offices and employments are ultimately the creatures of legislation. The Legislature alone may determine the duties and the interrelation of the public posts it establishes or authorizes to be established. Within the constitutional framework, the Legislature is the architect of the structure of government. The Judiciary has no creative power in that area. The court's function is to enforce prohibitions fashioned by statute or by the common law. Whether a further ban would be wise or unwise is not a subject upon which we may properly venture a view, and this opinion should not be understood to do so. We hold only that the common law did not bar the dual officeholding involved in this case, and that the question whether it should be barred in the public interest reposes in the power and responsibility of the legislative department.

The judgment is affirmed.

JACOBS and SCHETTINO, JJ. (dissenting). During the nineteenth century, conflicts of interest were widespread and widely tolerated. And although the twentieth century has by no means been free of them, there has fortunately been much less toleration and much more recognition of the need for curbing them. In 1957 a legislative committee reported to the Senate and General Assembly that it had become increasingly clear that, if our democratic process is to retain its vigorous appeal, its officials must not only discharge their responsibilities faithfully but must also enjoy public confidence that they are doing so, and it made far-reaching recommendations with that thought in mind. See Eisenberg, "Conflicts of Interest Situations and Remedies," 13 *Rutgers L. Rev.* 666, 682 (1959). Similarly, our courts have re-

cently stressed that public officials should avoid not only real conflicts of interest but apparent conflicts of interest as well. See *Griggs v. Princeton Borough,* 33 *N. J.* 207, 219 (1960); *Borough of Fanwood v. Rocco,* 33 *N. J.* 404 (1960); *Aldom v. Borough of Roseland,* 42 *N. J. Super.* 495, 502 (*App. Div.* 1956); *cf. Conflict of Interest and Federal Service* 17 (1960): "where public confidence is at issue, what people think is true may be as important as what is true."

While the case before the court is not strictly concerned with the much discussed actual and potential conflicts between public and private interests, it is concerned with the related (12 *Rutgers L. Rev.* 582, 587 (1958)) and well established common law principle, recently reasserted by this court in *DeFeo v. Smith,* 17 *N. J.* 183 (1955) and *Jones v. MacDonald,* 33 *N. J.* 132 (1960), that a public official may not hold incompatible offices. See *Mechem, Public Office and Officers,* §§ 419–431 (1890); *Throop, Public Officers,* §§ 30–40 (1892); 3 *McQuillin, Municipal Corporations,* § 12.67 (3*d ed.* 1949); 2 *Antieau, Municipal Corporation Law* 223 (1955); Conklin, "Plural Office Holding," 28 *Ore. L. Rev.* 332 (1949). In *DeFeo* the defendant, a member of the Atlantic County Board of Taxation, was appointed as a member of the County Board of Chosen Freeholders; the court found that the offices were incompatible and applied the common law principle; in the course of its opinion it had this to say:

"No misbehavior or indiscretions are charged against the defendant. Indeed, he is to be complimented on the existing desire to secure the benefit of his services in more places than one. Yet it is apparent that no man should be in a dual position where there exists the possibility of conflicting interests, despite the admirable manner in which he is presently performing his duties.

The gist of the test and the point to which our inquiry must be directed is the possibility of a conflict in the obligations of the positions in relation to the public interest.

If the duties are such that placed in one person they might disserve the public interests, or if the respective offices might or will conflict even on rare occasions, it is sufficient to declare them legally incompatible." 17 *N. J.,* at *pp.* 188–189.

In *Jones* the court cited and quoted approvingly from *DeFeo;* it held that the defendant could not lawfully be both a member of the Somerset County Board of Taxation and a councilman of the Borough of North Plainfield; it pointed out that the Borough might be a litigant before the County Board and that it would offend propriety for a man to sit in judgment of his own cause; and in answer to the contention that the situation may never actually occur, it said:

"It is no answer to say that the conflict in duties outlined above may never in fact arise. It is enough that it may in the regular operation of the statutory plan. 'If the duties are such that placed in one person they might disserve the public interests, or if the respective offices might or will conflict even on rare occasions, it is sufficient to declare them legally incompatible.' *DeFeo, supra* (17 *N. J.,* at *p.* 189). See *Wescott v. Scull, supra* (87 *N. J. L.* [410], at *p.* 418). Nor is it an answer to say that if a conflict should arise, the incumbent may omit to perform one of the incompatible roles. The doctrine was designed to avoid the necessity for that choice. 'It is immaterial on the question of incompatibility that the party need not and probably will not undertake to act in both offices at the same time. The admitted necessity of such a course is the strongest proof of the incompatibility of the two offices.' 42 *Am. Jur., Public Officers,* § 70, *p.* 936." 33 *N. J.,* at *p.* 138.

Many of the earlier New Jersey cases striking down the holding of incompatible offices may be found cited in *Wilentz ex rel. Golat v. Stanger,* 129 *N. J. L.* 606, 612 (*E. & A.* 1943). See *State v. Parkhurst,* 9 *N. J. L.* 427 (*Sup. Ct.* 1802) (Essex County Court Clerk and United States Senator); *State ex rel. Clawson v. Thompson,* 20 *N. J. L.* 689 (*Sup. Ct.* 1846) (New Jersey Attorney General and Salem County Prosecutor); *Lofland v. Hilton,* 80 *N. J. L.* 528 (*Sup. Ct.* 1910) (Burlington County Freeholder and Supervisor of County Roads); *Wescott v. Scull,* 87 *N. J. L.* 410 (*Sup. Ct.* 1915) (Atlantic County Freeholder and Councilman of Sommers Point). In the *Stanger* case the Court of Errors and Appeals, in an opinion by Justice Case, noted that "incompatibility there certainly was" (129 *N. J. L.,*

at *p.* 610) for a state senator to be counsel to the Director of Milk Control but found that counsel to the Director was not an office within the contemplation of the common law doctrine. In *People ex rel. Chapman v. Rapsey,* 16 *Cal. 2d* 636, 107 *P. 2d* 388 (*Sup. Ct.* 1940), the Supreme Court of California held that a municipal attorney was the holder of an office within the common law doctrine, that he might be required from time to time to prosecute and defend actions by and against the municipality, and that it was clearly incompatible for him to be the municipal judge. See *Howard v. Harrington,* 114 *Me.* 443, 96 *A.* 769, *L. R. A.* 1917*A,* 211 (*Sup. Jud. Ct.* 1916); *cf. In re Klaisz,* 19 *N. J.* 145 (1955). In the course of its opinion in *Rapsey* the court embraced *McQuillin's* oft-cited statement that incompatibility within the contemplation of the common law doctrine arises "where the nature and duties of the two offices are such as to render it improper from considerations of public policy for one person to retain both" and that "the true test is whether the two offices are incompatible in their natures, in the rights, duties or obligations connected with or flowing from them." See 3 *McQuillin, supra,* at *p.* 265. See also *Wilentz ex rel. Golat v. Stanger, supra,* 129 *N. J. L.,* at *p.* 611; *State ex rel. Clawson v. Thompson, supra,* 20 *N. J. L.,* at *p.* 690.

The opinion by the majority recognizes that a municipal attorney is the holder of an office within the common law doctrine but finds that his office is not incompatible with the office of senator. In reaching its conclusion it deprecates the sweep of the court's expressions in *DeFeo* and confines the common law doctrine strictly to conflicts of duties. It adopts the view that a municipal attorney is under no duty to his municipality to support or oppose legislative proposals or to engage in any other professional conduct which might come in conflict with his statewide duties as senator. It seems to us that this view wholly ignores the realities and the nature of the professional functions which are incidental and indeed peculiar to the office of municipal attorney; and it flies in the face of the allegations in the

complaint which was not controverted by testimony but was dismissed before trial on the defendant's application for judgment on the pleadings. See *Rappaport v. Nichols,* 31 *N. J.* 188, 193 (1959); *Evangelista v. Public Service Coordinated Transp.,* 7 *N. J. Super.* 164, 167 (*App. Div.* 1950). The complaint set forth that, upon the call of the township, its municipal attorney was under the duty of (1) representing the township before committees of the Legislature on matters pertaining to legislation in which the township might have an interest, (2) advising the township as to the legal effect of positions taken by it with respect to pending legislation affecting municipalities in general or the township in particular and (3) assisting the township in formulating policies to be pursued by it with respect to pending legislation and in the preparation of communications to members of the Legislature. The complaint also set forth the terms of the township ordinance which provided that its attorney shall serve as its legal adviser, shall represent it in all judicial and administrative proceedings, shall draft or approve all legal documents, shall supervise such additional attorneys as may be engaged, and shall perform such duties as may be necessary to provide legal counsel to the governing body of the township in its administration of the municipal affairs. As Mr. Charles S. Rhyne has properly pointed out in his recent work on municipal law, the municipal attorney is, in addition to the powers and duties ordinarily specified by ordinance, usually called upon to perform "all services incidental to his profession" and may be required "to prepare bills and present them to the legislature." *Rhyne, Municipal Law* 95 (1957).

In an article which appeared in the May 1955 issue of *New Jersey Municipalities* and was entitled "What I Expect From the Municipal Attorney," Township Committeeman Ehrlich of Scotch Plains noted (at *pp.* 31–32) that he expects him to keep informed on all legislative bills since "it is necessary for both the elected Municipal Officials and its Attorney to be ever vigilant in seeing that the acts of

the legislature are in the best interests of the Municipality we serve"; he stated further that "I expect him to draw any bills that the Municipality may wish to forward to the legislature for its approval and passage into law." In *City Attorneys and Their Salaries, A Study of the Duties and Responsibilities of the City Attorney in Modern Municipalities as Compared with his Compensation* (1960), Messrs. Charles S. and Brice W. Rhyne had the following to say (at *p.* 24) with respect to a city attorney's functions in the preparation of legislation and the representation of his city before the state legislature:

"(1) Preparation of Recommended Legislation

The City Attorney must be ever careful to determine whether or not there is any state constitutional or legislative provision which prohibits or controls the form and extent of action which his City Council proposes. He must determine whether new statutory powers are required. Where the need for additional enabling authority is apparent, the City Attorney must set himself to the often delicate task of preparing suggested legislation which will prove adequate from the city's standpoint and, at the same time, meet with approval in the state legislature.

(2) Representation of City Before State Legislature

The City Attorney is being called upon, more and more, to go to the state capital in furtherance or protection of municipal interests. Certainly, the City Attorney should be present at the meetings of legislative committees holding hearings on any proposed legislation which he has drafted or which affects his city. In many cases, the City Attorney has seen a recommended piece of legislation all the way through the legislative process, from the drafting of the proposed bill to the signing by the governor. This function of the City Attorney, serving as the representative of his city before the state legislature, looms increasingly important as cities grope for new powers enabling them to cope successfully with present-day problems."

In *May v. City of Auburn,* 112 *Me.* 143, 91 *A.* 177 (*Sup. Jud. Ct.* 1914), the plaintiff was appointed as city solicitor under an ordinance which provided for the fixing of his salary and set forth that he shall act as the legal adviser of the city and shall do all professional acts incident to his office or which may be required of him by the city

Pursuant to a request by the city he prepared a legislative bill and presented the matter on the city's behalf at a hearing before the judiciary committee of the legislature. He sought extra compensation for this service but the Supreme Judicial Court of Maine held that his service came within the term "professional acts" such as he was bound to perform under the ordinance. In the course of its opinion the court pointed out that the drafting of the act, which related to eminent domain, was not to be expected of a layman but was "a matter for the trained lawyer"; that presentation of such an act to the legislature or a legislative committee "is ordinarily committed not to the layman, but to an attorney"; that while a layman often presents his own matters to such a committee he is rarely employed to present those of another; and that the services which were rendered by the plaintiff were "plainly professional" in nature, concerned the interests of the city, and were duly required of him by the city council. 91 *A.*, at *p.* 178.

In his relations with the Legislature, the municipal attorney is obligated to advance the interests of his municipality alone, whereas the senator's concern is for all the municipalities. Oftentimes the individual interests of the municipalities will differ and one need only refer to his daily newspaper to see how intense the differences may become. Urban communities may support a particular policy approach to taxation while rural communities support a wholly different approach; one set of communities may favor a proposed state highway route while another set may vigorously oppose it; and additional illustrations of conflicting approaches and interests, too numerous to list here, may readily be found in the annual legislative bills directly affecting municipalities. Where the senator is not professionally obligated as a municipal attorney he is unrestrainedly free to study and consider opposing municipal viewpoints and thereafter impartially and objectively exercise his best judgment in the discharge of his high responsibilities to all the municipalities and all the people of the State. Where, however,

he is thus professionally obligated he is not free or, in any event, the public will so believe and serious impairment in public confidence will result. This should be avoided, as it would be, by sympathetic application of the common law doctrine.

Our sights must be set high and our course must be fixed true. When our judicial predecessors announced the common law doctrine they did so on the basis of prevailing conditions and considerations of public policy and *mores*. It should now be applied fairly and conscientiously in the light of current conditions and considerations and in that light it appears evident to us that the offices of municipal attorney and senator are incompatible. The responsibility of so declaring them within the common law doctrine is a judicial one which may not properly be disavowed or remitted to others. See *Henningsen v. Bloomfield Motors, Inc.*, 32 *N. J.* 358, 403 (1960); *Smith v. Brennan*, 31 *N. J.* 353, 361 (1960); *Faber v. Creswick*, 31 *N. J.* 234, 241 (1959); *Collopy v. Newark Eye and Ear Infirmary*, 27 *N. J.* 29, 41 (1958); *State v. Culver*, 23 *N. J.* 495, 505 (1957).

We vote to reverse.

*For affirmance*—Chief Justice WEINTRAUB, and Justices FRANCIS, PROCTOR and HALL—4.

*For reversal*—Justices JACOBS and SCHETTINO—2.