87 N.J. Super. 329 (1965)
209 A.2d 349
ANTHONY MARINI, PLAINTIFF,
v.
WILLIAM HOLSTER AND CITY OF CLIFTON, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided March 31, 1965.
*330 Mr. Jeremiah D. O'Dwyer for plaintiff (Messrs. Dughi & Johnstone, attorneys).
Mr. Oscar R. Wilensky for defendant William Holster (Messrs. Greenburg, Wilensky & Feinberg, attorneys).
Mr. Sam Monchak for defendant City of Clifton.
*331 KOLOVSKY, A.J.S.C.
The complaint filed by plaintiff against defendant Holster charged that the offices of City Manager, Director of Public Works and City Engineer of the City of Clifton held by him are incompatible. It sought a judgment requiring defendant to file a written statement as to which one of the three offices he elects to retain and declaring that the other offices are vacant; or alternatively if the defendant fails to file such statement, that the court declare two of the offices to be vacant. Before the pretrial conference, cross motions for summary judgment were made by plaintiff and defendant Holster. Both motions were denied and the court ordered that the City of Clifton be joined as a party to the action.
A pretrial conference was held on September 24, 1964, attended by the attorneys for the plaintiff, defendant Holster and the City of Clifton. There being comparatively little dispute as to the basic facts in the case, the pretrial order embodied, in effect, a stipulation of facts. On the basis of the stipulations in the pretrial order, plaintiff and defendant Holster each moved for summary judgment. Argument on those motions took place on December 18, 1964, and following the argument, the court dictated its conclusions into the record. Holster's motion was granted and plaintiff's motion denied.
An order for judgment, consented to as to form by all the parties, was signed on January 15, 1965. Thereafter, Clifton's attorney moved to modify the form of judgment which he said had been consented to by a member of his staff while he was absent from the city. He contended that the order, in directing that "judgment be entered in favor of the defendant William Holster" not only against the plaintiff Anthony Marini but also against defendant City of Clifton, will prejudice it in a dispute which has arisen as to whether the city is obligated to pay for the legal services rendered by Holster's attorneys. Of course, that issue was not involved in the above litigation. It will have to be dealt with in such proceedings as Holster may bring to enforce that alleged obligation.
*332 In the pretrial order, the City of Clifton contended that the dispute was one between the plaintiff and Holster and that it would abide by whatever the judicial determination of that controversy might be. In view thereof, the concern which the city expresses can be obviated without affecting the determination which I made as to the complaint filed herein by revising the decretal portion of the judgment so that it reads as follows:
"ORDERED that plaintiff's motion for summary judgment be and the same hereby is denied; that defendant Holster's motion for summary judgment be and the same hereby is granted and that the complaint filed herein be dismissed."
An order so providing should be submitted.
A transcript of the court's oral conclusions on the motions for summary judgment was for the first time submitted to the court when it heard argument on the motion to modify the form of the judgment. The transcript leaves much to be desired as far as accuracy is concerned. In view thereof and since the plaintiff, while the motion to modify the form of the order for judgment was pending, filed a notice of appeal, I deem it advisable to file this memorandum so that the following may serve as my opinion in lieu of the confused transcript.

OPINION
The matter is before the court on cross motions for summary judgment based on the facts set out in the pretrial order.
One of the contentions made by defendant Holster is that he should be permitted to introduce, in addition to the minutes of the meeting, oral testimony as to what transpired at the City Council meeting of December 4, 1956, when the City Council appointed Holster as City Manager. Plaintiff contends that under Campbell v. City of Hackensack, 115 N.J.L. 209 (E. & A. 1935), such oral testimony will not be *333 admissible. While this is true, this does not mean that the court cannot take into consideration the actual situation which then existed in the municipality. The court must interpret any resolution which was adopted at that meeting on the background of the situation which is revealed by the record in this case.
Paragraph 2 of the pretrial order gives a detailed recital of the facts. I need refer to but some of them. In 1934 the City of Clifton adopted, and since then has been governed by the provisions of, the "municipal manager form of government law," R.S. 40:79-1, et seq. The first City Manager appointed was one William Miller, who was then the City Clerk. On March 4, 1946 he appointed defendant Holster as "Post War Assistant Engineer." Miller continued as City Manager and City Clerk until January 1, 1952, receiving an annual salary of $2,981 per year as City Manager and $8,152.93 as City Clerk.
When he retired in 1951, effective as of January 1, 1952, the City Council appointed as City Manager John Fitzgerald, who was then City Engineer. Fitzgerald's annual salary as City Manager was fixed at $2,981 per year. While serving as City Manager he continued to act as City Engineer at an annual salary of $8,426 in 1951 and $9,268 in 1952.
On December 18, 1951, Fitzgerald, who was then acting City Manager, appointed Holster as Director of Public Works without salary. The appointment of Holster as Director of Public Works has never been rescinded so that one of the titles Holster still holds is that of Director of Public Works.
Fitzgerald continued to act as City Engineer and City Manager until the meeting of February 1, 1955, when he resigned as City Engineer. At the same time, in his capacity as City Manager he appointed Holster to succeed him as City Engineer. Fitzgerald had been receiving some $3,200 per year as City Manager, in addition to $10,000 a year as City Engineer. But when he resigned as City Engineer, his salary as City Manager was increased to $15,000 per year. "Longevity increases" resulted in his salary's being $15,750 per year *334 at the time of his resignation, which he submitted to the City Council at its meeting of October 16, 1956, when the City Council granted him a leave of absence with pay from December 29, 1956 to the effective date of his retirement, March 1, 1957. By resolution adopted at the meeting of October 16, 1956, the Council appointed Holster as Acting Municipal Manager, effective December 29, 1956. Thereafter, at its meeting of December 4, 1956, the City Council appointed Holster as City Manager, effective March 1, 1957.
It is undisputed that since December 29, 1956, Holster has acted as City Manager, as City Engineer and as Director of Public Works. The salary ordinance adopted in Clifton for the calendar year 1957, although not passed until September 17, 1957, provided that the City Manager's salary was not to exceed $3,221 per year and fixed a salary range for the office of City Engineer of $11,024 to $13,779 per year. The salary resolution adopted at the meeting of September 17, 1957, fixed the salary to be paid Holster as City Manager at $1,971 per year and as City Engineer at $13,779 per year. No salary attached to the office of Director of Public Works. It is interesting to note that the salaries payable to Holster as City Engineer and as City Manager totalled $15,750, the amount which was then being paid to Fitzgerald as City Manager.
An examination of the annual salary ordinances and resolutions adopted since 1957, shows that in each year separate salaries were provided for the offices of City Manager and City Engineer, one or the other being modified from time to time. The stipulated facts show that in 1963, the annual salary paid Holster as City Engineer was $16,488.06 plus a longevity increase of $1,002.78, and that the salary paid him as City Manager was $3,854.27 plus a longevity increase of $231.26.
Insofar as it deals with the three offices in question, the Administrative Code of the City of Clifton, the ordinance providing for the various offices and positions in the city government, has remained unchanged during the years here involved. It makes provision for the three offices  City Manager, *335 City Engineer and Director of Public Works. Holster has been performing the duties of these three offices during the periods mentioned.
Plaintiff charges that in holding these three offices, Holster is holding incompatible offices. Plaintiff seeks to compel defendant Holster to give up two of the offices. The issue as to the alleged incompatibility of two or more offices held by one man has been dealt with in a number of cases including several recent opinions of our Supreme Court. So in Jones v. MacDonald, 33 N.J. 132 (1960), the court held that the offices of member of the county board of taxation and borough councilman were incompatible. In Reilly v. Ozzard, 33 N.J. 529 (1960), the court held that the offices of state senator and township attorney were not incompatible.
Of course, the incompatibility charged here does not arise from any statutory prohibition. Involved here is a charge that the offices held by Holster are incompatible under the common law doctrine prohibiting dual holding of incompatible offices.
As Chief Justice Weintraub said in Jones v. MacDonald, 33 N.J., at p. 135:
"* * * The outer reaches of the doctrine are not easily delineated. Courts `are prone to avoid the formulation of a general definition and content themselves with the discussion of specific cases and particular facts * * *.' * * * We so approach this matter.
Public policy demands that an office holder discharge his duties with undivided loyalty. The doctrine of incompatibility is intended to assure performance of that quality. Its applicability does not turn upon the integrity of the person concerned or his individual capacity to achieve impartiality, for inquiries of that kind would be too subtle to be rewarding. The doctrine applies inexorably if the offices come within it, no matter how worthy the officer's purpose or extraordinary his talent. * * *"
Further, as the Chief Justice said in Reilly v. Ozzard, 33 N.J., at p. 543,
"* * * Incompatibility is usually understood to mean a conflict or inconsistency in the functions of an office. It is found where in the established governmental scheme one office is subordinate to another, *336 or subject to its supervision or control, or the duties clash, inviting the incumbent to prefer one obligation to another. * * *"
This is basically the public policy behind the rule prohibiting the holding of incompatible offices. There is no yardstick by which the rule may be applied. Each case must be judged on its own peculiar facts. That being so, I have considered whether or not the circumstances shown here indicate a situation where Holster must be adjudged the holder of incompatible offices who should be required, as was the defendant in the Jones case, to make an election as to which office he would continue to hold.
Resolution of that question requires a consideration of the relevant provisions of the municipal manager form of government law.
N.J.S.A. 40:81-11 provides that the governing body, the municipal council,
"shall appoint a municipal manager, an assessor, or where required by law a board of assessors, an auditor, a treasurer, a clerk, and an attorney. One person may be appointed to two or more such offices, except that the offices of municipal manager and auditor or assessor shall not be held by the same person."
Further, R.S. 40:82-1 provides
"The municipal council shall as soon as possible after its organization appoint, by a vote of a majority of all its members, a municipal manager at such salary and under such conditions as the municipal council by a majority vote may decide." (Emphasis added)
R.S. 40:82-4 in outlining the duties of the municipal manager provides, among other things, that the municipal manager shall "[p]erform such other duties as may be required of the municipal manager by ordinance or resolution of the municipal council."
It is because of these provisions that all counsel agreed with the court's suggestion that a municipal council which appoints a municipal manager may provide, as one of the manager's *337 "conditions" of employment, that he perform, in addition to the usual duties of a municipal manager, engineering and other duties.
If Mr. Holster had not theretofore been the City Engineer and Director of Public Works and if, on appointing him as City Manager, the council had set up as a condition of his appointment that he perform in addition to the duties of municipal manager set out in the city's Administrative Code, the duties provided by that code for performance by the City Engineer and the Director of Public Works, such action would have been valid. There is no incompatibility in the duties of these three offices. There is no clash in the duties which would impel one charged with performing those duties to prefer one set of duties over the others. But plaintiff insists that incompatibility exists because under the Administrative Code, the City Manager appoints, and on notice and hearing may remove, the City Engineer and the Director of Public Works and, therefore, the latter two offices are subordinate to that of City Manager.
To accept plaintiff's argument is to sacrifice reality to form. While it is true that the resolution of December 4, 1956 which appointed Holster as City Manager did not expressly set up as a condition of his appointment that he also continue to perform the duties of City Engineer and Director of Public Works which he had theretofore been performing, it is clear that this was the intent and purport of the resolution. Nothing in the resolution or in the future conduct of the affairs of the municipality indicated any intent that he should be permitted or required to cease his activities as City Engineer and Director of Public Works. Quite the contrary, witness the various salary ordinances and resolutions.
Since it is conceded that if Mr. Holster had been required to perform the duties of City Engineer and the duties of Director of Public Works as a condition of his appointment as City Manager, there would be no legal objection thereto, I can find no logical justification for a holding that because those duties are being performed under separate titles, Mr. *338 Holster must cease performing one or more of them. It seems to me that the only conclusion to be drawn from the admitted facts is that when Holster was appointed City Manager, he was appointed on the understanding that he was to act as City Manager at the relatively nominal salary fixed in the salary ordinance, was to continue to perform the duties of City Engineer at the salary for that office fixed by the salary ordinance and was to perform the duties of Director of Public Works at no additional salary.
It is true the rule is generally stated that offices are deemed incompatible when one is subordinate to another. But in my view, that rule has no application to a situation such as is involved here, where the sole power to appoint and remove the City Manager is in the municipal council and the sole power to appoint and remove the City Engineer and the Director of Public Works is in the City Manager. I am satisfied that at the time Holster accepted the office of City Manager, there was, in effect, a merger of the office of City Manager with the offices of City Engineer and Director of Public Works which he then held. After his appointment as City Manager, Holster, in performing his duties, whether the duties were those imposed by the Administrative Code on the City Manager, the City Engineer or the Director of Public Works, was acting as City Manager. Dereliction in the performance of any of those duties would be dereliction by the City Manager and would subject him as City Manager to disciplinary action by the Council. (See N.J.S.A. 40:82-3)
I do not think it necessary for me to resolve the question of whether or not the sole office which Holster now holds is that of City Manager or whether, for example, if he should resign as City Manager, he could still claim title to the office of City Engineer. That question and similar questions of tenure should be resolved only if and when they actually arise. All that I am saying is that the present arrangement is one in which, in effect rather than in form, Holster as a condition of his appointment as City Manager is also charged with the *339 performance of the duties assigned by the Administrative Code to the office of City Engineer and the Director of Public Works. I find nothing legally objectionable in the present situation.
Mr. Holster's motion for summary judgment is therefore granted. Plaintiff's motion will be denied.